# Exhibit C

The DOT Order



**U.S. Department of Transportation**

Office of the Secretary of Transportation

SUBJECT: ENSURING RELIANCE UPON SOUND ECONOMIC ANALYSIS IN DEPARTMENT OF TRANSPORTATION POLICIES, PROGRAMS, AND ACTIVITIES



DOT Order

1. PURPOSE

This Order updates and resets the principles and standards underpinning U.S. Department of Transportation (Department or DOT) policies, programs, and activities to mandate reliance on rigorous economic analysis and positive cost-benefit calculations and ensure that all DOT grants, loans, contracts, and DOT-supported or -assisted State contracts bolster the American economy and benefit the American people.

2. CANCELLATION

None

3. APPLICABILITY AND SCOPE.

This Order applies to all the Department's Operating Administrations (OA) and the Departmental Offices in the Office of the Secretary of Transportation (OST).[1]

4. EFFECTIVE DATE

This Order is effective upon its date of execution.

5. POLICIES.

The following principles govern the implementation and administration of all DOT policies, programs, and activities:

    a. The Department's grantmaking, lending, policymaking, and rulemaking activities shall be based on sound economic principles and analysis supported by rigorous cost-benefit requirements and data-driven decisions. This requirement shall apply

---

[1] The terms "Operating Administration" and "OA" hereinafter refer to both the Department's operating administrations and the OST Departmental Offices.

  regardless of whether the activities in question fall below the economic threshold required for review by the Office of Information and Regulatory Affairs.

b. To engage in grantmaking, lending, policymaking, or rulemaking, the benefits must be estimated to outweigh the costs. The calculation of the "social cost of carbon" is marked by logical deficiencies, a poor basis in empirical science, politicization, and the absence of a foundation in legislation. Consequently, the Administrator of the Environmental Protection Agency has been ordered by the President to issue guidance to address these harmful and detrimental inadequacies. Prior to issuance of that guidance, DOT shall ensure estimates to assess the value of changes in greenhouse gas emissions resulting from agency actions, including with respect to the consideration of domestic versus international effects and evaluating appropriate discount rates, are, to the extent permitted by law, consistent with the guidance contained in OMB Circular A-4 of September 17, 2003 (Regulatory Analysis).

c. Statutes governing DOT policies, programs, and activities shall be administered to identify and avoid, to the extent practicable, relevant, appropriate, and consistent with law, adverse impacts on families and communities. Adverse impacts may include, but are not limited to, noise; water pollution; soil contamination; a denial of or a reduction in transportation services; increased difficulty in raising children in a safe and stable environment; and destruction or disruption of community cohesion, safety, or economic vitality.

d. Statutes governing DOT policies, programs, and activities shall also be administered to maximize, to the extent practicable, relevant, appropriate, and consistent with law, benefits for families and communities. The benefits may include, but are not limited to, economic opportunities, such as increased access to jobs, healthcare facilities, recreational activities, commercial activity, or any actions or project components that will help alleviate poverty, enhance safety, and primarily benefit families and communities by improving the quality of their lives, raising their standard of living, or enabling them to participate more fully in our economy.

e. DOT-supported or -assisted programs and activities, including without limitation, all DOT grants, loans, contracts, and DOT-supported or -assisted State contracts, shall not be used to further local political objectives or for projects and goals that are purely local in nature and unrelated to a proper Federal interest. DOT programs and activities should instead prioritize support and assistance for projects and goals that are consistent with the proper role of the Federal government in our system of federalism, have strong co-funding requirements, adhere faithfully to all Federal statutory Buy America requirements, and not depend on continuous or future DOT support or assistance for improvements or ongoing maintenance.

f. To the maximum extent permitted by law, DOT-supported or -assisted programs and activities, including without limitation, all DOT grants, loans, contracts, and DOT-supported or -assisted State contracts, shall prioritize projects and goals that:

      i. utilize user-pay models;
      ii. direct funding to local opportunity zones where permitted;
      iii. to the extent practicable, relevant, appropriate, and consistent with law, mitigate the unique impacts of DOT programs, policies, and activities on families and family-specific difficulties, such as the accessibility of transportation to families with young children, and give preference to communities with marriage and birth rates higher than the national average (including in administering the Federal Transit Administration's Capital Investment Grant program);
      iv. prohibit recipients of DOT support or assistance from imposing vaccine and mask mandates; and
      v. require local compliance or cooperation with Federal immigration enforcement and with other goals and objectives specified by the President of the United States or the Secretary.

6. RESPONSIBILITIES.

   a. The General Counsel is the chief legal officer of the Department with final authority on all questions of law for all components of DOT. The Office of the General Counsel (OGC) shall provide the legal advice, support, and guidance necessary to implement and effectuate this Order, including via the issuance of additional orders as warranted.

   b. OAs engaged in grantmaking, lending, policymaking, or rulemaking activities shall, in coordination and consultation with OGC, implement this Order and determine the most effective and efficient way of integrating the principles outlined in this Order with their existing regulations and guidance.

   c. In undertaking the integration with existing operations, and in coordination and consultation with OGC, OAs shall:

      1. Develop and issue guidance necessary to implement and effectuate this Order, or review and update any previously issued guidance to ensure consistency with this Order. OAs shall also engage in the notice-and-comment process, as appropriate and in accordance with DOT Order 2100.6B (Policies and Procedures for Rulemakings) and any corresponding regulations, to implement the requirements of this Order.

      2. Update and revise all Notices of Funding Opportunity, grant agreements, loan agreements, and other program documents as necessary to ensure compliance with Federal law and consistency with this Order.

      3. Review their existing grant agreements, loan agreements, and contracts, and, to the extent permitted by law, unilaterally amend the general terms and conditions as necessary to ensure compliance with Federal law and consistency with this Order, and provide corresponding notice of such to recipients.

    d. OAs shall prepare a report describing their efforts to comply with this Order and the impact of those efforts on their grantmaking, lending, policymaking, and rulemaking activities. The first of these reports shall be submitted to OGC no later than six months after the effective date of this Order, and each subsequent report shall be due no later than six months thereafter.

    e. OAs shall also observe the following principles:

        1. This Order should be implemented in a simple, transparent manner that avoids adding unnecessary procedural or regulatory steps or causing undue delay. The Order should not be interpreted to impose procedural or regulatory requirements that provide no benefit in the decision-making process. The Order should be carried out in a manner that considers the impact that delays in project delivery or rulemaking may have on the economic vitality, safety, and well-being of the American people, their families, and communities.

        2. OAs shall strive to promote the economic opportunities of DOT programs, policies, and activities for families and communities. Procedures shall be established or modified, as necessary, to provide meaningful opportunities for public involvement by families and communities during the planning and development of programs, policies, and activities (including the identification of potential effects, alternatives, and mitigation measures).

        3. DOT shall ensure comprehensive public engagement, including with families and community stakeholders, and provide meaningful access to public information concerning both the costs and the benefits of DOT programs, policies, or activities.

        4. Compliance with the terms of this Order is an ongoing responsibility. OAs shall continuously monitor their programs, policies, and activities to ensure they are administered in a manner consistent with this Order. This Order does not alter existing assignments or delegations of authority to the Operating Administrations or other DOT components.

7. <u>DISCLAIMER</u>.

This Order is intended to improve the internal management of DOT and is not intended to, nor does it, create any rights, benefits, or trust responsibility, substantive or procedural, enforceable at law or equity, by a party against the Department, its OAs, its officers, or any person. Nor should this Order be construed to create any right to judicial review involving the compliance or noncompliance with this Order by the Department, its Operating Administrations, its officers or any other person.

_____
Secretary of Transportation