**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

CITY OF CHELSEA and
CITY OF SOMERVILLE,

*Plaintiffs*,

v.

DONALD J. TRUMP, President of the United States, PAMELA J. BONDI, Attorney General of the United States, UNITED STATES DEPARTMENT OF JUSTICE, KRISTI L. NOEM, Secretary of the United States Department of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, SEAN P. DUFFY, Secretary of the United States Department of Transportation, UNITED STATES DEPARTMENT OF TRANSPORTATION, SCOTT TURNER, Secretary of the United States Department of Housing and Urban Development, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and UNITED STATES OF AMERICA,

*Defendants*.

Case No. 1:25-cv-10442

**DECLARATION OF CHELSEA POLICE CHIEF KEITH E. HOUGHTON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, KEITH E. HOUGHTON, declare under penalty of perjury under the laws of the State of Massachusetts that the following is true and correct:

**<u>Background</u>**

1. I have personal knowledge of the facts set out in this affirmation and, if called as a witness, could testify competently to the matters set out below.

2. I am the Chief of Police for the City of Chelsea, Massachusetts. I have served in this capacity since October 2022.

3. I began working for the Chelsea Police Department (CPD) in 1986, working my way up through the ranks and becoming a Captain in 2002. In 2007, I was appointed as Commander of CPD's Criminal Investigation Division and Public Information Officer. In that capacity, I formed the region's first specialized Gang Unit to combat gang and youth violence in the area. I also initiated one of the first public surveillance programs in the region, improving homeland security and crime prevention. I also created the Police Officer in Residence Program. This strategy placed officers in Chelsea public housing apartments to reside alongside residents, resulting in a seventy-five percent (75%) decline in criminal activity just after the first year. This program was recognized by the FBI as one of the most innovative police strategies in the nation.

4. I have authored numerous grants to bring critical funding to Chelsea for law enforcement improvement and to strengthen community relationships, most notably attaining funding to further build relationships of trust and confidence between law enforcement and Chelsea's evolving diverse, immigrant community. This effort was named one of the seventeen best practices in the United States by the National League of Cities (NLC) Centers for Research and Innovation.

5. I hold a Bachelor of Science degree from Western New England University and a Master's Degree from Anna Maria College in Paxton, Massachusetts. I am also a graduate of the FBI Academy in Quantico, Virginia.

**Policing In Chelsea**

6. Chelsea is home to approximately 40,000 residents. Our population is very diverse, including a significant immigrant population, primarily from Central America. In recent years,

there has also been an increase in our Haitian immigrant population. Some of our immigrant residents are U.S. citizens; others are undocumented; and others have varying immigration statuses (*e.g.*, asylum-seekers, green card holders). Many households are "mixed households," meaning that different members of one household have different immigrant statuses.

7. At CPD, we follow the FACT method for success: Fairness, Accountability, Compassion, Transparency. In partnership with residents, business and political leaders, and community organizations within the City, our officers work diligently to maintain trust, encourage open communication, and provide ongoing support to our neighborhoods, implementing the ideals and philosophy of community policing.

8. These concepts are critical for maintaining the safety and security of the City. We treat all of our residents with dignity and respect. This helps CPD build trust with our community, so that everyone will feel safe and secure in their interactions with us. We want victims and witnesses of crime to feel comfortable reporting crime to CPD, because when criminal activity is underreported or hidden, that makes it more difficult for us to keep the City safe for everyone. CPD has intentionally worked very hard over the years to build trust throughout all segments of our community.

9. The "sanctuary" policies that Chelsea has adopted are an integral part of that community engagement and trust-building. If community members, particularly from the immigrant community, believe that CPD is actively participating in federal immigration enforcement, then this would have a chilling effect, and people would be reluctant to cooperate with police. They would fear that reporting crime, whether as a victim or a witness, could put them or their loved ones at risk of federal immigration enforcement.

10. I am aware that the Chelsea City Council has passed a Resolution setting forth the City's sanctuary city policy, and CPD has issued several directives that help implement those policies. Specifically, in 2017, CPD issued General Order 2017-03, "The Specific Role and Impact of the CPD in the Enforcement of Federal Civil Immigration Law By the Department of Homeland Security (DHS-ICE-ERO)." We amended the General Order in August 2024 and further revised it in February and May of 2025. A current copy of the General Order is attached as Exhibit A.

11. Pursuant to this General Order, the specific immigration status of an individual or group of individuals in and of itself is not a matter of local police concern or subsequent enforcement action by the CPD, unless there exists through reliable and credible information a potential threat to public safety and/or national security.

12. Per the General Order, the CPD does not undertake immigration-related investigations and does not routinely inquire into the specific immigration status of any person(s) encountered during normal police operations, except for in circumstances of arrests for violent felonies, already convicted felons, terrorism-related offenses, human trafficking, and criminal gang activities.

13. Moreover, as the General Order states, officers "shall not directly participate in any . . . ICE tactical operation(s) solely for the civil enforcement of federal immigration laws as part of any Detention or Arrest Team," except for in direct response to a request for immediate assistance on a temporary basis for officer safety purposes (*e.g.*, directing traffic around officers) or for assistance in the apprehension of an individual with a Massachusetts warrant for their arrest.

14. In addition, CPD complies with the decision of the Massachusetts Supreme Judicial Court in *Lunn v. Commonwealth*, which strictly limits the ability of police in Massachusetts to

comply with ICE detainers, *i.e.*, hold individuals for ICE on civil immigration detainers after they would otherwise be entitled to release.

15. CPD works cooperatively with federal law enforcement agents all the time when it comes to criminal matters. We have officers assigned full-time to Federal Task Forces that are aimed at preventing criminal activity and bringing perpetrators to justice. But we do not directly participate in operations that are solely for the civil enforcement of federal immigration laws.

16. Nothing in Chelsea's Resolution or in our police policies seeks to interfere with the lawful exercise of federal law enforcement operations; or shields undocumented individuals from deportation; or attempts to conceal, harbor, or shield any individual from detection; or otherwise seeks to obstruct the enforcement of federal immigration laws. To the contrary, our Resolution and police policies allow the efforts of federal immigration enforcement officers to occur unimpeded.

**Harm to Chelsea from the Challenged Actions**

17. I am aware that the new federal Administration has issued a number of Executive Orders and taken other actions aimed at taking away federal funding from "sanctuary jurisdictions," and using the threat of funding withdrawal to get those jurisdictions to change their policies.

18. This is highly problematic for Chelsea. If we maintain our policies—which we know help keep our community safe—then we are at risk of losing substantial federal funding. For example, CPD regularly receives funds from the U.S. Department of Justice's Byrne JAG program (which have been used for detective work investigating drug activity in our community) as well as its Bulletproof Vest (BVP) program. I am aware that other City departments also rely

on federal funding. Losing that federal funding would have a significant negative impact on Chelsea and mean reduced services to our residents.

19. But the alternative would be equally bad, if not worse. If Chelsea had to eliminate our sanctuary city policies, then this would destroy the trust that CPD has built up with the community—and in particular the immigrant community—over many decades. It would essentially erode community policing to zero, and no one in the community would trust us. That in turn would mean people would not come to CPD to report crimes that they either witnessed or were victims of. That would make it much harder for us to prevent crime and bring criminals to justice, and would make our community much less safe. If CPD were forced to engage in federal civil immigration enforcement, that would also be a drain on our resources, requiring us to spend time and resources on those efforts instead of on the local policing efforts we have prioritized.

20. At CPD, we know our community very well. I personally have served this community for close to 40 years. Based on my knowledge of Chelsea and its residents, and my decades-long experience working to keep this community safe, I know that the City's sanctuary policies are critical for the public safety of our community.

I declare under penalty of perjury under the laws of the State of Massachusetts that the foregoing is true and correct.

Executed this 20th day of May, 2025, at Chelsea, Massachusetts.

*<u>/s/ Keith E. Houghton</u>*
KEITH E. HOUGHTON
Chief of Police
City of Chelsea

# Exhibit A

<table>
<tr><td colspan="2">CHELSEA POLICE DEPARTMENT</td><td>Department Manual:<br>Policy No. 1.33</td></tr>
<tr><td colspan="3">Subject:<br>The Specific Role and Impact of the CPD in the Enforcement of Federal Civil Immigration Law By the Department of Homeland Security (DHS-ICE-ERO)</td></tr>
<tr><td colspan="2">CALEA / MASSACHUSETTS POLICE ACCREDITATION STANDARDS REFERENCED: 41.4.5, 42.2.8<br>General Orders 2008-38 (7/17/08); 2013-05; 2015-01; 2017-01<br>Detainer Form (I-247A)_<br>Commonwealth v Lunn 477 Mass. 517 (2017)</td><td>GENERAL ORDER<br>2017-03</td></tr>
<tr><td>Effective Date:<br>August 1, 2017<br>Reviewed: Feb 25, 2024<br>Amended 8/15/2024<br>Revised 2/3/2025<br>Revised 05/15/2025</td><td>Issuing Authority<br>Keith E. Houghton<br>Keith E. Houghton<br>Chief of Police</td><td></td></tr>
</table>

## I. PURPOSE AND SCOPE

The Chelsea Police Department recognizes and values the diversity of the community it serves. Many of its residents have emigrated to this community from other countries and some may not be citizens or legal residents of the United States. The City and the Chelsea Police Department are committed to promoting safety and providing proactive community policing services to all who live, work, or visit our community. In furtherance of the adherence to the department's community policing philosophy, all community members and general stakeholders should know that they are encouraged to seek and obtain police assistance and protection regardless of their specific immigration and/or documentation status without fear of status checks.

The Chelsea Police Department relies upon the cooperation of all persons located in the city of Chelsea including citizens, legal residents as well as those without a specific documentation status, to achieve our important goals of protecting life and property, investigating and preventing crime as well as resolving recurring neighborhood issues. Assistance from the many various immigrant populations is especially important when an immigrant, whether documented or not, is the victim or witness to a serious crime including the intimate partner issue of domestic violence. It is absolutely essential that these victims do not feel apprehensive or intimidated in any way in coming forward with the requisite information and general firsthand knowledge to aid in investigating a particular crime and holding those responsible accountable to our criminal justice system. This type of essential mutual trust and spirit of cooperation is absolutely crucial in preventing and solving crime incidents, as well as maintaining public order, safety and security in the entire community.

We fully realize that federal civil immigration enforcement or perceived enforcement by the Chelsea Police Department could have a "*chilling effect*" in our local immigrant community and could limit cooperation with police by members of the community at large. As stated, we depend on the cooperation of all of our residents and stakeholders including immigrants, legal and undocumented, in solving all sorts of crimes and in the maintenance of public order. Without assurances that they will not be subjected to an immigration investigation and possible deportation, many immigrants with critical information would not come forward, even when heinous crimes are committed against them and/or their families.[1] Because many families with undocumented family members also include legal immigrant members, this would drive a potential wedge between the Chelsea Police and huge portions of the legal immigrant community as well.

We as duly sworn police officers are responsible for providing effective police services to everyone in the City of Chelsea in an equal, fair, and just manner. The Chelsea Police Department is concerned primarily with the safety and welfare of all individuals found within the territorial jurisdiction of the City of Chelsea. Thus, the detection of criminal behavior is of primary interest and concern in dealing with any individual suspected of violating the law. Race, religion, gender, sexual orientation, age, occupation, immigration status, or any other arbitrary characteristic pertaining to any specific individual have absolutely no bearing on any decision for a Chelsea Police Officer to effectuate a stop or detention of an individual or have any impact whatsoever on the decision to make a lawful arrest for a violation of criminal law.

The specific immigration status of an individual or group of individuals in and of itself, is not and shall not be a matter of local police concern or subsequent enforcement action by the CPD unless there exists through reliable and credible information a potential threat to public safety and/or national security. It is incumbent upon all officers and employees of the Chelsea Police Department to make an unyielding personal commitment to equal enforcement of the law and equal service to the public regardless of immigration documentation status. Confidence in this valued commitment will not only protect an individual's rights and freedoms from being adversely affected but shall also increase the public's confidence and trust in the police department's effectiveness and efficiency in protecting and serving the members of the entire City of Chelsea community.

## II. Procedural Background:

**Definitions**

ICE: Immigration and Customs Enforcement and any other federal agency charged with the enforcement of immigration laws. ICE

Administrative Warrant: A warrant, notice to appear, removal order, warrant of deportation, or other ICE custody document (I-200, I-203, I-205 or another listed in the National Crime Information Database (NCIC)) issued by a federal immigration official, not a judicial officer, and not based on a finding of probable cause for an alleged criminal law violation.

Immigration Detainers and ICE Detainers: Requests made by federal immigration officials, including but not limited to, those authorized under Section 287.7 of Title 8 of the Code of Federal Regulations to local Law Enforcement or Courts, to voluntarily maintain custody of an individual once that individual is released from local custody, and/or to notify a federal agency before the pending release of an individual.

1. **Biometric Fingerprint Submissions:**

Under Massachusetts General Laws, and the policy of the Chelsea Police Department, all persons taken into police custody shall be fingerprinted. Under the current system the fingerprints of all persons arrested by state and local law enforcement agencies, in which those agencies routinely submit these electronic biometric prints to the FBI (via the Massachusetts State Police server) for criminal justice database checks, are also automatically shared with the Department of Homeland Security (DHS-ICE). These fingerprints are checked against the DOJ's biometric identification system for criminal history records are automatically sent to DHS's biometric system to check against its immigration and law enforcement records. The United States government has determined that a jurisdiction cannot choose to have the fingerprints that it submits to the federal government processed *only* for criminal history checks.

Further, jurisdictions cannot ask that the identifications that result from DHS's processing of the fingerprints not to be shared with local ICE field offices in that jurisdiction. It is ICE, and not the state or local law enforcement agency, that determines what immigration enforcement action, if any, is appropriate. During that electronic submission Immigration and Customs Enforcement (ICE) personnel will check the local arrestee's (currently being held in a police lock-up by the local or State PD) personal biographical information against the active DHS-ICE immigration databases. If ICE determines that it has what was deemed to be an "actionable interest" in the local arrestee based on a so-called "hit" (match) on that database with the submitted fingerprints, ICE will then determine what specific enforcement action, if any, to take based on their DHS Enforcement Priorities and available personnel resources in existence at the time of the hit.

2 **Request for an Immigration Detainer by ICE:**

If the local arrestee appears to have violated the federal immigration laws and the arrestee is deemed to fall within any of the applicable enforcement priorities listed below (II-3), ICE will decide whether or not to issue what is known as an **Immigration Detainer – Notice of Action** form for the arrested individual currently held in local police custody. A Request for a Detainer form, which is sent via a fax after an initial phone call is made to the local police department's OIC, is an official *request* from DHS-ICE directed to the specific state or local law enforcement agency to hold the individual for a period not to exceed 48 hours so that ICE has the opportunity to arrange for the potential transfer of the individual into federal custody in situations when gaining immediate custody is either impracticable or impossible.[2]

[2] 8 CFR 287.7(a) and 8 CFR 287.7(d). Federal law provides that an individual cannot be held on a detainer for longer than **48 hours**, excluding weekends and holidays. **At the end of the 48 hour period, the detainer expires**.

DEPARTMENT OF HOMELAND SECURITY

**IMMIGRATION DETAINER - NOTICE OF ACTION**

Subject ID:
Event #:

File No:
Date:

TO: (Name and Title of Institution - OR Any Subsequent Law Enforcement Agency)

FROM: (Department of Homeland Security Office Address)

Name of Alien: ______

Date of Birth: ______ Citizenship: ______ Sex: ______

**1. DHS HAS DETERMINED THAT PROBABLE CAUSE EXISTS THAT THE SUBJECT IS A REMOVABLE ALIEN. THIS DETERMINATION IS BASED ON** *(complete box 1 or 2).*

☐ A final order of removal against the alien;
☐ The pendency of ongoing removal proceedings against the alien;
☐ Biometric confirmation of the alien's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or
☐ Statements made by the alien to an immigration officer and/or other reliable evidence that affirmatively indicate the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

**2. DHS TRANSFERRED THE ALIEN TO YOUR CUSTODY FOR A PROCEEDING OR INVESTIGATION** *(complete box 1 or 2).*

☐ Upon completion of the proceeding or investigation for which the alien was transferred to your custody, DHS intends to resume custody of the alien to complete processing and/or make an admissibility determination.

**IT IS THEREFORE REQUESTED THAT YOU:**

- **Notify DHS** as early as practicable (at least 48 hours, if possible) before the alien is released from your custody. Please notify DHS by calling ☐ U.S. Immigration and Customs Enforcement (ICE) or ☐ U.S. Customs and Border Protection (CBP) at ______. If you cannot reach an official at the number(s) provided, please contact the Law Enforcement Support Center at: (802) 872-6020.
- **Maintain custody** of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody. The alien **must be served with a copy of this form** for the detainer to take effect. This detainer arises from DHS authorities and should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters
- Relay this detainer to any other law enforcement agency to which you transfer custody of the alien.
- Notify this office in the event of the alien's death, hospitalization or transfer to another institution.

☐ If checked: please cancel the detainer related to this alien previously submitted to you on ______ (date).

(Name and title of Immigration Officer) (Signature of Immigration Officer) (Sign in ink)

**Notice:** If the alien may be the victim of a crime or you want the alien to remain in the United States for a law enforcement purpose, notify the ICE Law Enforcement Support Center at (802) 872-6020. You may also call this number if you have any other questions or concerns about this matter.

**TO BE COMPLETED BY THE LAW ENFORCEMENT AGENCY CURRENTLY HOLDING THE ALIEN WHO IS THE SUBJECT OF THIS NOTICE:**

Please provide the information below, sign, and return to DHS by mailing, emailing or faxing a copy to ______.

Local Booking/Inmate #: ______ Estimated release date/time: ______

Date of latest criminal charge/conviction: ______ Last offense charged/conviction: ______

This form was served upon the alien on ______, in the following manner:

☐ in person ☐ by inmate mail delivery ☐ other (please specify): ______

(Name and title of Officer) (Signature of Officer) (Sign in ink)

SAMPLE

**3. Implications of Commonwealth v Lunn 477 Mass. 517 (2017):**

Immigration detainers are voluntary requests to Law Enforcement Agencies (LEAs) for assistance—compliance is not mandatory. As such, LEAs are not legally required to enforce or honor detainers. The Federal Immigration officer will ask the State custodian [local, state police, or sheriff] to *voluntarily* hold the person for up to two days [e.g., 48 hours] after he/she would otherwise be entitled to be released from State custody (e.g., bailed), in order to allow Federal ICE authorities the time necessary to arrive and take the person into Federal custody for possible removal.

It is important to note that these detainers are not criminal detainers nor are they criminal arrest warrants. They do not charge anyone with a criminal violation of the law, indicate that anyone has been charged with a crime, or ask that anyone be detained in order that he or she can be prosecuted for a crime. Detainers like these are used to detain individuals because the Federal authorities reasonably believe that they are civilly removable from the country.

If a LEA wishes to honor an immigration detainer and to keep an individual in custody after such time as he or she would otherwise be released, it may do so *only* under circumstances where a warrantless arrest is already permitted by state law here in Massachusetts.

Generally speaking, under Massachusetts state law LEAs may keep an individual in custody who is the subject of a detainer only under the following two situations:

a. The detainer is accompanied by a **judicial warrant** signed by a federal judge or federal magistrate – and **not** a so-called administrative warrant which is a document signed by an ICE Agent/Supervisor and not a judicial officer of the court; OR

b. The LEA has probable cause to believe the individual has committed a state or federal crime for which he/she is not eligible for release by the bailing authority

(e.g., murder, or violation of a Chapter 209A domestic restraining order – which only can be bailed by a judge not a clerk magistrate).

If an individual is to be released from custody, LEAs should also take due care to ensure that any potential delays that may occur in releasing the individual are reasonable and justified by what is/are deemed to be a legitimate administrative purpose(s). So-called “pretextual" delays designed with the real purpose of allowing ICE additional time to arrive and take custody of an individual have been deemed to be unreasonable and unlawful. Further, if an LEA chooses to keep an individual in custody under either circumstance directly above — state law requires that the LEA hold the individual for no more than 24 hours without first presenting the individual to a neutral and detached magistrate for a determination of probable cause via a Jenkins Hearing.[3] This is a long standing practice and is usually conducted at the Police Department by the on-call Clerk or Assistant Clerk Magistrate.

## III. POLICY

The enforcement of the nation’s federal civil immigration laws are the primary responsibility of the federal government. Accordingly, the Chelsea Police Department shall not undertake immigration-related investigations and shall not routinely inquire into the specific immigration status of any person(s) encountered during normal police operations. Exceptions may be made under Section IV (C) below. Further, the Chelsea Police Department shall not enter into any voluntary Federal 287(g) Program that would have local officers trained and sworn to enforce federal civil immigration laws.

This prohibition does not preclude the Chelsea Police Department from cooperating and assisting with federal immigration officials from the DHS Immigration and Customs Enforcement (ICE) Agency when formally requested as part of an on-going *criminal investigation*, or from **notifying those federal officials in serious situations** where a potential threat to public safety or national security is perceived. [See §§ IV (C), (D) below].

## IV. PROCEDURE

### A. Immigration Detainer – Notice of Action

- Whenever any Officer in Charge (OIC) or Prisoner Control Officer of the Chelsea Police Department receives either an ***Immigration Detainer*** (Form I-247A – issued 12/12) in the form of a fax from DHS-ICE, the OIC shall immediately upon arrival at Headquarters inform the bailing Clerk or Assistant Clerk Magistrate of the existence of the Federal ICE Detainer when they respond to Police Headquarters to make the decision of setting bail on those currently in custody.

[3] See Jenkins v. Chief Justice of the Dist. Ct. Dept., 416 Mass. 221 (1993) (requiring neutral review of probable cause to occur within twenty-four hours).

- It shall be sole decision of the bailing Clerk of Court to decide whether to set a monetary bail or release the arrestee on personal recognizance.

- Pursuant to Commonwealth v. Lunn (2017) the bailing Clerk **may not** order that the arrestee be held in police custody based solely on the Immigration Detainer unless there are extenuating circumstances such as the arrestee also committed a restraining order violation (only bailable by a Judge) or there is a criminal default warrant in effect against the arrestee.

- The OIC shall ensure that the arresting Officer adheres to the following procedure when an Immigration Detainer is received:

    1. Make a copy of the detainer and staple it to the report in the Records drawer
    2. Put the original detainer in the arrest envelope
    3. Make note of the detainer on the white board behind the desk
    4. Add the proper charge to the arrest report, adding the proper language in the report narrative




- Although the issuance of a Detainer by ICE is not a criminal charge please add the 'Description" above under charges in the IMC Record Management System so that the Administrative Division (Crime Reporting and Analysis Unit) can accurately track each Detainer that the department receives.

- The **arrestee SHALL always be afforded a copy** of the applicable ICE Immigration Detainer Form.

- A copy of the ICE Detainer Form shall be placed in the arrestee's arrest folder to be transmitted to the Chelsea District Court.

- OICs: Please send an email directed to the Chief of Police and Officer Hernandez (Ehernandez@chelseama.gov) of the CRAU indicating that a Detainer has been received and indicate whether or not an ICE Agent responded to interview the arrestee who is the subject of the Detainer.

**B. Inquiries into Immigration Status:**

(i) A person's right to file a police report; participate in any police-community activities (i.e., Community Action Team Meetings, Neighborhood Watch, National Night Out, etc); or otherwise benefit from general police services

shall not be contingent upon the individual providing proof of citizenship or any type of documented immigration status. MPAC Standard: **42.2.8**

(ii) Consequently, officers shall not question any person about his or her specific citizenship or immigration status unless that person is reasonably believed to be involved in one or more of the activities identified in **Subsection IV (C)** below.

(iii) Officers shall not request passports, visas, resident alien cards (i.e., "*green cards*"), or travel documents in lieu of, or in addition to, driver's licenses and other standard forms of identification. Such documents shall only be requested when standard forms of identification are unavailable or when the officer is proceeding under **Subsection IV (C)** below.[4]

**C. Notification to Federal Immigration Authorities:**

In furtherance of the department's community policing philosophy and continued engagement and outreach efforts, Chelsea Police Officers shall not participate in any federal civil immigration related investigations of any immigrant or foreign national, **except** under the following circumstances when the immigrant or foreign national:[5]

1. is **arrested** for any **violent felony** by CPD Personnel including but not limited to:

   - Murder,
   - Assault with intent to Murder,
   - Assault & Battery by means of a Dangerous Weapon,
   - Assault by means of a Dangerous Weapon,
   - Armed Burglary,
   - Rape, (or any Sex Offense)
   - Mayhem, or
   - Armed Robbery;

2. When the CPD acquires reliable information that the individual in Chelsea Police custody has been **convicted** in a court of competent jurisdiction of **any felony**;

3. is **arrested** by CPD Personnel for any **terrorism-related offense**, has a subsequent conviction for such activity or is otherwise *reasonably suspected* of involvement in any terrorist and/or subversive activities;[6]

---

[4] **Note:** An exception to the above could occur if an operator of a lawfully stopped motor vehicle presents what appears to be a valid Foreign Country's Driver's License in which the license is valid in this state for only one (1) year and requires the operator to produce proof to the investigating officer of the most recent admission date to the United States so as to effectively toll the one year time period. (e.g., Form I-94 or Passport with the entry stamp).

[5] Please See CPD Policy No. 4.36, titled Consular Notification and Access for further procedural requirements.

[6] **Note**: The FBI Joint Terrorism Task Force (JTTF) shall also be contacted forthwith.

4. is **arrested** or has any convictions for any offense involving the entry or fraudulent assimilation or **trafficking of individuals** into the United States, or is reasonably suspected of participating in an *organized venture* to bring or fraudulently assimilate undocumented foreigners in this country; **OR**

5. is suspected based upon the legal standard of probable cause (basis of knowledge and veracity) of **participating in criminal street gang activity involving violence and/or distribution of illegal drugs/weapons**.

**Note:** If any of the preceding arrest situations should occur (1-4) or if any Officer develops probable cause based on reliable and credible information that an individual at large is believed to be involved in a violent street gang and is also believed to be an undocumented foreign national then ICE may be contacted by the Officer in Charge for further investigation.

**D. Immigration and Customs Enforcement (ICE) Investigations and/or Requests for Assistance:**

1. The U.S. Bureau of Immigrations and Customs Enforcement has primary jurisdiction for enforcement of the provisions to Title 8, U.S. Code dealing with illegal entry into the United States by foreign nationals.

2. Chelsea Police Officers **shall not** directly participate in any such ICE tactical operation(s) solely for the ***civil enforcement*** of federal immigration laws as part of any Detention or Arrest Team unless:

   - it is in direct response to a request for immediate assistance on a temporary basis for "*Officer Safety*" purposes; or

   - for the assistance in the apprehension of any individual who is also wanted on a **Massachusetts issued Warrant Management System Criminal Warrant (WMS) which remains in full force and effect at the time of the request**.

3. Whenever ICE has occasion to be in the city of Chelsea, whether looking for a target(s) who is the subject of a **criminal warrant** (usually the criminal investigatory branch of ICE - *Homeland Security Investigations* (HSI) or looking for individuals who have **Final Orders of Deportation** (Civil component of ICE – *Enforcement & Removal Operations*-ERO), or conducting a surveillance, the CPD OIC shall send a **Serious Incident**

4. When a federal law enforcement agency is physically present at the time of release, CPD shall coordinate a safe transfer of custody:

For Adult / Juvenile individuals wanted on non-judicial federal warrants (e.g., administrative or civil warrants), officers shall notify and direct the federal agency to the sally port, where the transfer shall occur: (In cases involving a juvenile, CPD shall follow established protocols requiring that the juvenile be released to a parent or legal guardian in the sally port when transferring custody to Federal agents)

CPD personnel will monitor the transfer to ensure it is conducted safely.

CPD officers will only intervene if there is a witnessed violation of Massachusetts General Laws (M.G.L.).

This process is designed to ensure the safety of officers, federal agents, and individuals in custody and citizens by keeping all interactions safe, secure and controlled within the designated transfer area. The primary goal of the CPD remains to ensure that all procedures are lawful, safe, and professional, maintaining compliance with both state and federal law.

**Notification Text forthwith to the Chief of Police and other Command Staff Personnel**.

- In addition the OIC shall ascertain from the notifying ICE Agent or Supervisory Agent who called the OIC - pursuant to national de-confliction protocol to alert the presence in the city at a specific address - the specific "***reason***" (e.g., criminal, civil) that they are looking to place the wanted individual into federal custody.

- If it is for a Massachusetts Criminal Warrant or other State Warrant[7] for which we as duly sworn Chelsea Police Officers have the right of arrest then Chelsea Officers may assist as we would with any law enforcement agency where we have the legal authority do to so.
- If it is for **civil reasons only** then we shall stand down and not respond and only assist if a situation rises where an officer's (Agent's) safety is at risk where there is an emergency call for assistance.
- In all cases the OIC shall ensure that a call number is generated on the Dispatch Log by emergency Communications (e.g., Immigration Enforcement).
  - If multiple addresses are involved a Call Number shall be generated for each specific address.
- The ICE Agent shall be asked to call back the OIC with the results of the investigation (e.g., no service, one in custody, etc.) so that the Dispatch Log can be updated.
- **Calls from Residents**:

[7] See G.L. Chapter 276 Sections 10(a)(b) for authorization for arrests from Fugitives from Justice from other States.

- In the event that a local resident calls Emergency Communications and/or Police Headquarters and is uncertain as to whether a "Police Officer"
  - is knocking at their door
  - who is indicating that it is "the Police,"
- the dispatcher/officer shall ascertain if the address in question is one that ICE is currently off at pursuant to an ongoing investigation
  - and if so shall so advise
- and if not
  - shall send a Chelsea Unit to investigate further.
- If the Chelsea Officer arrives on scene and locates the ICE Agents then the CPD Officer shall inform the resident that these are federal law enforcement agents who are conducting an investigation and the Chelsea Officer shall then clear the scene.

- For those individuals placed in custody by ICE Officials solely for civil enforcement reasons a courtesy booking **shall not be required by CPD personnel**.

- **Note:** If either ICE-HSI or ICE-ERO have a pre-planned operation where multiple targets are sought in the City of Chelsea for civil immigration reasons only (where Chelsea Officers have no legal statutory authority to assist), the CID Division Commander shall designate a Detective to be a "*Point Person*" assigned to Police Headquarters who shall be in direct contact with an ICE Supervisory Agent(s) who is in the field in the city of Chelsea. The Point Person shall have the responsibilities of coordinating with Dispatch Personnel in updating the computerized dispatch log as to whether an arrest service was made or not and also keeping an itemized list of those that are placed in custody. The Police Chief shall also be notified forthwith via phone, text or email with any and all updates so that timely notifications can be made to certain designated city officials once the operation has been concluded to prevent any unnecessary misinformation or rumors from being generated on social media or otherwise.

4. Any detention by a member of the Chelsea Police Department during the request for assistance by ICE should be based upon a reasonable belief that the detained individual is either involved in **criminal activity other than a civil violation of federal immigration laws** or is wanted by the Commonwealth of Massachusetts on a WMS Active Warrant.

**E. Tracking Sheet Maintained by the Crime Reporting and Analysis Unit**

- An electronic tracking sheet listing all ICE Detainers shall be maintained by the Crime Reporting and Analysis unit.

- The Tracking Sheet shall list the Case #, Date, Arrestee's Name, ICE Official Name sending the Detainer, Arrest Location, Offense(s), Detainer #, Reason for Detainer, Criminal History (Y/N),
- The CRAU shall conduct periodic follow-ups with ICE to determine if an arrestee that was taken into federal custody by ICE was in fact deported. The information shall be added to the Tracking Sheet as well.
- The Tracking Sheet shall have restricted access on the department's shared drive.
- The Crime Analysis and Reporting Unit shall send out quarterly reports to the Chief of Police and the Command Staff.

**Note:** All officers will be notified of any changes or updates to this policy. If any training is required due to a change or update to this policy, all officers will receive the required training.