## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CITY OF CHELSEA and
CITY OF SOMERVILLE,

      *Plaintiffs*,

          v.

DONALD J. TRUMP, President of the United
States, PAMELA J. BONDI, Attorney
General of the United States, UNITED
STATES DEPARTMENT OF JUSTICE,
KRISTI L. NOEM, Secretary of the United
States Department of Homeland Security,
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, SEAN P. DUFFY,
Secretary of the United States Department of
Transportation, UNITED STATES
DEPARTMENT OF TRANSPORTATION,
SCOTT TURNER, Secretary of the United
States Department of Housing and Urban
Development, UNITED STATES
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT, and UNITED
STATES OF AMERICA,

      *Defendants*.

Case No. 1:25-cv-10442

**DECLARATION OF KATE HARTKE
IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION**

      I, KATE HARTKE, declare under penalty of perjury under the laws of the State of

Massachusetts that the following is true and correct:

**<u>Background</u>**

      1.      I have personal knowledge of the facts set out in this affirmation and, if called as a

witness, could testify competently to the matters set out below.

2.      I am the Director of Grants and External Funds for the City of Somerville, Massachusetts.  I have served in this position since March 2020 and have worked for the city of Somerville since June 2013.  I oversee development and submission of the City's grant proposals and manage the budgeting, accounting, and reporting for select federal grants awarded to the City of Somerville.

**Somerville's Federal Funding**

3.      Somerville's federal funding makes up a significant portion of its budget and is the sole or primary source of funding for a number of public services.  For years, Somerville has relied on such funding to provide critical services to community members, such as educational services, crime prevention, assistance to those who are unhoused, and safe streets.

4.      Somerville's fiscal year runs from July 1 to June 30 and is referred to by the year in which it ends.  For example, fiscal year 2024 runs from July 1, 2023 to June 30, 2024; fiscal year 2025 runs from July 1, 2024 to June 30, 2025.  Budgeting is a months-long process that typically officially starts in January and goes until a budget is passed, usually mid-year.

5.      In fiscal year 2024, Somerville's overall budget was $337 million.  In fiscal year 2025, our overall budget was $365 million.  For fiscal year 2026, we are projecting that our overall budget will be approximately $380 million.

6.      Somerville receives federal funding in a variety of ways.  In some cases, we have federal grants that come directly from a particular federal agency.  In other cases, the Commonwealth of Massachusetts or a State agency receives federal funding, and Somerville receives money as a pass-through. We also receive some funds through "congressionally directed spending," which is federal funding that members of Congress can directly request for specific projects in their district.

7.    In most cases, we receive federal funding through reimbursements.  That means that Somerville expends the money first and then is reimbursed for those expenditures from the federal government after the services have been rendered.

8.    Somerville received approximately $19.4M in federal funds for fiscal year 2024. Virtually all of this federal funding was reimbursement-based.

9.    As of today, Somerville has received approximately $12.2M in federal funds for fiscal year 2025, of which approximately $9.7M was passed through the state.  Additionally, Somerville is eligible to receive approximately $7.6M in reimbursements on active and open federal grants.

10.    The federal funding that we receive supports a wide variety of services and projects that are critically important for the well-being and safety of our residents and that have no connection to federal immigration enforcement.  For example, Somerville receives funds from the U.S. Department of Housing and Urban Development (HUD) for housing and community development activities through the Community Development Block Grant (CDBG), the HOME Investment Partnerships Program, and Emergency Solutions Grants (ESG) grant programs.  In recent years, Somerville has received approximately $3 million each year from the federal government from these three grant programs.  These funds support a variety of critical programs, such as new housing construction for low-income households, homelessness prevention, revitalizing struggling business districts, family stabilization and job readiness for Somerville's neediest residents, and temporary shelter for homeless individuals and families.

11.    We also often receive funds from the U.S. Department of Transportation (DOT) for street safety enhancement projects, as detailed further below.  In addition, as one of our congressionally directed spending projects, we have been awarded funding from the

Environmental Protection Agency (EPA) for the Poplar Street Pump Station, which is a major infrastructure undertaking to reduce flooding and assist with stormwater management in approximately 60% of our densely populated city. We also often apply for and receive grants from the Federal Emergency Management Agency (FEMA) for emergency service and disaster preparedness projects.

12.     Somerville additionally has been awarded $48,000 from FEMA's FY2022 Assistance to Firefighters Grant (AFG) program. Somerville also made a request for $678,479 for FEMA's FY2024 AFG program. The city received a total of approximately $1M in Urban Area Security Initiative (UASI) awards in 2023 and 2024.

**The Harm to Somerville from the Challenged Actions**

13.     Somerville has spent millions of dollars with the understanding that the federal government would reimburse those expenditures. The challenged executive actions have created widespread uncertainty within our community, and we are now faced with potentially covering these gaps ourselves. For example, we spend substantial money on educational services, infrastructure improvements, and emergency and public safety needs in anticipation of federal reimbursement.

14.     Moreover, important citywide projects, such as street safety enhancements, have been put on hold due to the uncertainty surrounding federal grants—Somerville cannot afford to expend money that will not later be reimbursed.

15.     For example, Somerville was awarded a Safe Streets and Roads for All (SS4A) grant from DOT in fiscal year 2022 in the amount of roughly $117,000. With that funding, Somerville intended to improve street safety in the city, including at a high crash location, through the use of "quick build" treatments. This construction is incredibly important for the spring and

summer months to ensure that those walking, biking, and driving on the roads are as safe as possible.  At this time of the year, the city should be contracting for materials and installation, but because of the widespread uncertainty regarding whether Somerville will be reimbursed under this already awarded grant, we have had no choice but to halt this project.

16.     Somerville was awarded another SS4A grant from DOT in fiscal year 2023, this time in the amount of nearly $4 million, for the purpose of implementing Somerville's Bicycle Network Plan to allow bicyclists to safely traverse Somerville and reduce injuries and fatalities. Though focused on cycling safety improvements, this important infrastructure would enhance safety for all users: motorists, cyclists, and pedestrians. This grant is reflected on DOT's website. On May 13, 2025, Maria Kunhardt, Competitive Grants Program Manager of the Federal Highway Administration (an agency within DOT) emailed Somerville, informing us that the General Terms and Conditions for the SS4A grant had been updated, and that our grant agreement "must be executed under the new template."  A true and correct copy of Ms. Kunhardt's email is attached as Exhibit A.

17.     In her email, Ms. Kunhardt specifically highlighted new Terms and Conditions in the grant agreement, stating: "Note that Article 24 includes language related to the letter issued by the US. Secretary of Transportation on April 24, 2025 (attached)."  The letter that Ms. Kunhardt attached is the April 24, 2025, letter from U.S. Department of Transportation Secretary Sean Duffy to All Recipients of U.S. Department of Transportation Funding that is cited in the Complaint in this matter.

18.     Among other new language that Somerville is now required to agree to, Article 24.2 of the Terms and Conditions states, "The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy

-5-

requirements . . . and Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law."  A true and correct copy of the Terms and Conditions document attached to Ms. Kunhardt's email is attached hereto as Exhibit B.

19.    In addition to imminent funding denials (particularly of DOT SS4A funds), Somerville is faced with having to expend funds on projects and services without clarity on the extent of our federal funding loss under this Administration.  On an ongoing basis throughout the fiscal year, we evaluate anticipated revenue and expenses, in order to keep within our budget. The potential loss of federal funding has complicated this process, and the city is now forced to contemplate its next steps in the face of no reimbursement.

20.    A number of federal grants, such as Title I grants, are formula funded, meaning that the grant amounts are set by formulas (*e.g.*, based on a city's demographics for the particular population to be served) rather than through a competitive grant process. Traditionally, this has meant that receipt of those funds is more predictable and consistent, but now—in light of the challenged executive actions—this is much more unpredictable and uncertain.

21.    If the city does not receive the expected federal funding, Somerville will have to cut necessary city staff and programs.  The city will also have to divert funds from other critical services or deplete city reserves.  Certainly, on the education side, it is foreseeable that if federal funds are withdrawn, we would not be able to maintain our current levels of teachers and staff. Given that federal money for schools often targets low-income students, it will be our most vulnerable residents who will feel the brunt of any such cuts.  Although the City would certainly try to fill those gaps as best we could, there would be no way to replace that loss of federal funding,

and it would be a significant blow.  Other programs and services, such as services for homebound seniors and critical infrastructure projects that keep our city safe would also be greatly impacted, and there is no doubt that services would have to be cut.

22.     Without injunctive relief, Somerville will suffer serious consequences in terms of public safety, community trust, and public trust.

I declare under penalty of perjury under the laws of the State of Massachusetts that the foregoing is true and correct.

Executed this 29ᵗʰ day of May, 2025, at _Somerville_, Massachusetts.


KATE HARTKE
Director of Grants and External Funds
City of Somerville

# Exhibit A

| From: | Brad Rawson |
|---|---|
| To: | Nikki Spencer; Cindy Amara; Kate Hartke |
| Cc: | Thomas Galligani; Alan Inacio |
| Subject: | FW: Updated 2023 SS4A Grant Agreement (GA) Schedules, General Terms and Conditions, and Exhibits- Somerville |
| Date: | Tuesday, May 13, 2025 9:25:45 AM |
| Attachments: | SS4A FY23 Grant Agreement Template_3172025- Somerville (2025.05.12).docx |
|  | SS4A FY23 Terms and Conditions_3172025.pdf |
|  | SS4A FY23 Exhibits_3172025.pdf |
|  | Letter to Grant Applicants_final.pdf |

Good morning team,

We've just received some new information from USDOT/FHWA regarding our big FY2023 "Safe Streets & Roads for All" grant award.

We will stand by pending internal discussion.

Thanks,

Brad

---

**From:** Kunhardt, Maria (FHWA) <maria.kunhardt@dot.gov>
**Sent:** Tuesday, May 13, 2025 7:16 AM
**To:** Greg Hanafin <ghanafin@somervillema.gov>
**Cc:** Brad Rawson <BRawson@somervillema.gov>; Grzegorzewski, Joshua (FHWA) <Joshua.Grzegorzewski@dot.gov>; Carr, William (FHWA) <william.carr@dot.gov>; Miller, Kenneth (FHWA) <Kenneth.Miller@dot.gov>
**Subject:** Updated 2023 SS4A Grant Agreement (GA) Schedules, General Terms and Conditions, and Exhibits- Somerville

Good Morning Greg,

Thank you so much for your patience. The Program Office provided the attached **updated 2023 SS4A Grant Agreement (GA), General Terms and Conditions, and Exhibits.** The grant agreement for Somerville's Bicycle Network Vision Safety Demonstration Project must be executed under the new template. We transferred the project information from the last draft GA into the attached Microsoft Word document. Please:

- Review the **updated grant agreement** in its entirety and update the project information, as needed.
  - Make a new selection and review the narrative for Attachment E. The language in the table is has been entirely updated.
- Review the updated **Terms and Conditions.** Note that **Article 24** includes language related to the letter issued by the US. Secretary of Transportation on April 24, 2025 (attached).
- Review the updated **FHWA Exhibits**.
- Once you review all the documentation and confirm the project information, return the updated draft GA Schedules (with Track Changes) back to me and I'll coordinate with the

Program Office to provide the final version for your signature.

Feel free to call me anytime to discuss. We look forward to continuing to work with you on this important project.

Best regards,

Maria

_____

**Maria E. Kunhardt**
Competitive Grants Program Manager
Federal Highway Administration - Massachusetts
220 Binney Street, Cambridge, MA 02142
617-494-3241
Maria.kunhardt@dot.gov

**From:** Greg Hanafin <ghanafin@somervillema.gov>
**Sent:** Friday, January 17, 2025 9:27 AM
**To:** Carr, William (FHWA) <william.carr@dot.gov>
**Cc:** Brad Rawson <BRawson@somervillema.gov>; Kunhardt, Maria (FHWA) <maria.kunhardt@dot.gov>; Grzegorzewski, Joshua (FHWA) <Joshua.Grzegorzewski@dot.gov>
**Subject:** RE: HSA240216PR City of Somerville (MA) FY23 S4A agreement and Standard Forms

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Hi Will,

Thank you for the update. I see that in the version of the grant agreement you sent over the line item in the Cost Clarification Table has already been changed from Miscellaneous to Administrative. Does a draft need to be resubmitted for review, or can this be considered the final version to send for signature?

Best,
Greg

-------------------
**Greg Hanafin** (he/him/his)
Transportation Planner, Mobility Division
City of Somerville, OSPCD
93 Highland Ave.

**From:** Carr, William (FHWA) <william.carr@dot.gov>
**Sent:** Friday, January 17, 2025 9:00 AM
**To:** Greg Hanafin <ghanafin@somervillema.gov>
**Cc:** Brad Rawson <BRawson@somervillema.gov>; Kunhardt, Maria (FHWA)
<maria.kunhardt@dot.gov>; Grzegorzewski, Joshua (FHWA) <Joshua.Grzegorzewski@dot.gov>
**Subject:** RE: HSA240216PR City of Somerville (MA) FY23 S4A agreement and Standard Forms

**This email is from an external source. Use caution responding to it, opening attachments or clicking links.**

Hi Greg,

Regarding the forms listed in item 2 – SF-LLL and SF-424B, Somerville did submit them as part of their application but for some reason did not make it into the program office folder. The files are now in the project folder and do not need to be completed again by you. My apologies for the confusion. All that is needed now is the change to the draft grant agreement.

V/R
Will Carr

William G. Carr
Discretionary Grants Coordinator & PMA
Federal Highway Administration – Massachusetts
220 Binney Street, 9th Floor
Cambridge, MA 02142
(617) 494–3622

**From:** Carr, William (FHWA)
**Sent:** Friday, January 17, 2025 8:57 AM
**To:** Greg Hanafin <ghanafin@somervillema.gov>
**Cc:** Brad Rawson <BRawson@somervillema.gov>; Kunhardt, Maria (FHWA)
<maria.kunhardt@dot.gov>; Grzegorzewski, Joshua (FHWA) <Joshua.Grzegorzewski@dot.gov>
**Subject:** FW: HSA240216PR City of Somerville (MA) FY23 S4A agreement and Standard Forms

Good morning, Greg,

The AO (Agreement Officer) has reviewed the Somerville FY23 SS4A draft grant agreement. There are two items to address, they are listed in Rich's email below and I will also include them in mine.

1. Their review noted the Cost Classification Table (page 8) Miscellaneous line item, should be labeled as Administrative.

2. The AO also noted that required Standard Form SF-LLL and SF-424B are not included in the application materials

Blank copies of the Standard Form SF-LLL and SF-424B are attached to this email for you to complete as requested. Please send the completed forms as well as the draft grant agreement with the noted change to the Cost Classification Table to me and I will forward the documents to the program office for approval. If you have any questions or concerns please reach out at any time.

Thank you!

V/R
Will Carr

William G. Carr
Discretionary Grants Coordinator & PMA
Federal Highway Administration – Massachusetts
220 Binney Street, 9th Floor
Cambridge, MA 02142
(617) 494–3622

**From:** Hull, Rich (FHWA) <richard.hull@dot.gov>
**Sent:** Thursday, January 16, 2025 4:39 PM
**To:** Carr, William (FHWA) <william.carr@dot.gov>
**Cc:** Grzegorzewski, Joshua (FHWA) <Joshua.Grzegorzewski@dot.gov>; Kunhardt, Maria (FHWA) <maria.kunhardt@dot.gov>; Parker, Stephen (FHWA) <stephen.parker@dot.gov>; Wheeler, Travis (FHWA) <travis.wheeler@dot.gov>
**Subject:** HSA240216PR City of Somerville (MA) FY23 S4A agreement and Standard Forms

William Carr,

Good afternoon.

The Agreement Officer (AO) completed their review the draft agreement and supporting documentation for the agreement with the City of Somerville.

Their review noted the Cost Classification Table (page 8) Miscellaneous line item, should be labeled as Administrative.

The AO also noted that required Standard Form SF-LLL and SF-424B are not included in the application materials. I have attached the blank forms to this email. I am able to send the request, to complete and return the forms, to the selected recipient, if you prefer.

Respectfully,

**Rich**

Richard J. Hull
Agreement Specialist (HCFA-41)
Office of Assistance Agreements (HCFA-40)
Office of Acquisition and Grant Management (HCFA)
Federal Highway Administration (FHWA)
Department of Transportation (DOT)
Teams Chat Rich Hull
Office 202-366-0627
Text: 571-241-4090

*HCFA values your perspective on your recent acquisition experience.  Please take a moment to complete our brief customer survey available here. Your response is anonymous and will help us assess the quality of our support to your program.*

**City of Somerville Public Records Notice**

*Please be advised that the Massachusetts Attorney General has determined that email is a public record unless the content of the email falls within one of the stated exemptions under the Massachusetts Public Records Laws.*

# Exhibit B

**U.S. DEPARTMENT OF TRANSPORTATION**

**GENERAL TERMS AND CONDITIONS UNDER THE**
**FISCAL YEAR 2023 SAFE STREETS AND ROADS FOR ALL ("SS4A") GRANT**
**PROGRAM:**
**FHWA PROJECTS**

**Date: January 4, 2024**
**Revised:  October 1, 2024**
**Revised:    March 17, 2025**

## Table of Contents

Article 7 Purpose.............................................................................................................. 6
  7.1    Purpose. ................................................................................................................ 6
Article 8 USDOT Role........................................................................................................ 6
  8.1    Division of USDOT Responsibilities. ....................................................................... 6
  8.2    USDOT Program Contact. ....................................................................................... 7
Article 9 Recipient Role..................................................................................................... 7
  9.1    Statements on the Project. ...................................................................................... 7
  9.2    Statements on Authority and Capacity. ................................................................... 7
  9.3    USDOT Reliance. ..................................................................................................... 8
  9.4    Project Delivery. ...................................................................................................... 8
  9.5    Rights and Powers Affecting the Project. ................................................................ 8
  9.6    Notification of Changes to Key Personnel. .............................................................. 8
Article 10 Award Amount, Obligation, and Time Periods ................................................ 9
  10.1   Federal Award Amount ........................................................................................... 9
  10.2   Federal Obligations. ................................................................................................ 9
  10.3   Budget Period ....................................................................................................... 10
  10.4   Period of Performance. .......................................................................................... 10
Article 11 Statement of Work, Schedule, and Budget Changes ...................................... 11
  11.1   Notification Requirement. ...................................................................................... 11
  11.2   Statement of Work Changes. ................................................................................. 11
  11.3   Schedule Changes. ................................................................................................ 11
  11.4   Budget Changes. ................................................................................................... 11
  11.5   USDOT Acceptance of Changes. .......................................................................... 12
Article 12 General Reporting Terms. .............................................................................. 13
  12.1   Report Submission. ............................................................................................... 13
  12.2   Alternative Reporting Methods. ............................................................................. 13
  12.3   Paperwork Reduction Act Notice. .......................................................................... 13
Article 13 Progress and Financial Reporting ................................................................. 13
  13.1   Quarterly Performance Progress Reports. ............................................................. 13
  13.2   Quarterly Financial Status. .................................................................................... 13
Article 14 Performance Reporting .................................................................................. 13
  14.1   Baseline Performance Measurement. .................................................................... 13
  14.2   SS4A Final Report ................................................................................................. 14
  14.3   Performance Measurement Information……………………………………………14
  14.4    Performance Reporting Survival……………………………………………………14
  14.5    Program Evaluation……………………………………………………………………15
Article 15 Noncompliance and Remedies ....................................................................... 15
  15.1   Noncompliance Determinations. ........................................................................... 15
  15.2   Remedies. ............................................................................................................. 16
  15.3   Other Oversight Entities. ....................................................................................... 16
Article 16 Agreement Termination .................................................................................. 16
  16.1   USDOT Termination. ............................................................................................. 16
  16.2   Closeout Termination. ........................................................................................... 17
  16.3   Post-Termination Adjustments. ............................................................................. 17
  16.4   Non-Terminating Events. ....................................................................................... 17
  16.5   Other Remedies. ................................................................................................... 18

Article 17 Monitoring, Financial Management, Controls, and Records .......................... 18
  17.1   Recipient Monitoring and Record Retention. ......................................................... 18

17.2    Financial Records and Audits. .................................................................................18
17.3    Internal Controls. ....................................................................................................19
17.4    USDOT Record Access. ..........................................................................................19
Article 18 Contracting and Subawards .................................................................................19
18.1    Build America, Buy America ..................................................................................19
18.2    Small and Disadvantaged Business Requirements. ................................................21
18.3    Engineering and Design Services. ..........................................................................21
18.4    Foreign Market Restrictions. ..................................................................................22
18.5    Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment. ..22
18.6    Recipient Responsibilities for Subawards. .............................................................22
18.7    Subaward and Contract Authorization. ...................................................................22
Article 19 Costs, Payments, and Unexpended Funds ...........................................................23
19.1    Limitation of Federal Award Amount. ...................................................................22
19.2    Projects Costs. .........................................................................................................22
19.3    Timing of Project Costs. .........................................................................................23
19.4    Recipient Recovery of Federal Funds. ...................................................................23
19.5    Unexpended Federal Funds. ....................................................................................23
19.6    Timing of Payments to the Recipient. ....................................................................23
19.7    Payment Method. .....................................................................................................23
19.8    Information Supporting Expenditures. ....................................................................23
19.9    Reimbursement Frequency. ....................................................................................23
19.10   Match. ......................................................................................................................23
Article 20 Liquidation, Adjustments, and Funds Availability .............................................24
20.1    Liquidation of Recipient Obligations. ...................................................................24
Article 21 Agreement Modifications ....................................................................................24
21.1    Bilateral Amendments. ............................................................................................24
21.2    Unilateral Contact Modifications. ..........................................................................24
21.3    USDOT Unilateral Modifications. ..........................................................................24
21.4    Other Modifications. ...............................................................................................24
Article 22 [RESERVED] ......................................................................................................26
22.1    [RESERVED]. .........................................................................................................26
Article 23 [RESERVED] ......................................................................................................26
23.1    [RESERVED]. .........................................................................................................26
Article 24 Federal Financial Assistance, Administrative, and National Policy Requirements ....25
24.1    Uniform Administrative Requirements for Federal Awards. ..................................25
24.2    Federal Law and Public Policy Requirements. .......................................................25
24.3    Federal Freedom of Information Act. ......................................................................25
24.4    History of Performance. ..........................................................................................26
24.5    Whistleblower Protection. .......................................................................................26
24.6    External Award Terms and Obligations. .................................................................26
24.7    Incorporated Certifications. ....................................................................................26
Article 25 Assignment ..........................................................................................................27
25.1    Assignment Prohibited. ...........................................................................................27
Article 26 Waiver ..................................................................................................................27
26.1    Waivers. ...................................................................................................................27
Article 27 Additional Terms and Conditions .......................................................................27
27.1    Effect of Planning and Demonstration or Implementation Award. ........................27
27.2    Disclaimer of Federal Liability. ..............................................................................27
27.3    Environmental Review ............................................................................................27
27.4    Railroad Coordination. ............................................................................................30
27.5    Relocation and Real Property Acquisition. .............................................................30
27.6    Equipment Disposition. ...........................................................................................30

Article 28 Mandatory Award Information .................................................................. 30

    28.1   Information Contained in a Federal Award. ....................................................30

Article 29 Construction and Definitions ................................................................... 31

    29.1   Attachments. ....................................................................................................31

    29.2   Exhibits. ...........................................................................................................31

    29.3   Construction. ....................................................................................................31

    29.4   Integration. .......................................................................................................30

    29.5   Definitions. .......................................................................................................30

Article 30 Agreement Execution and Effective Date ............................................... 31

    30.1   Counterparts. ....................................................................................................31

    30.2   Effective Date. .................................................................................................31

## Index of Definitions

Administering Operating Administration ........................................................................ 7
Environmental Review Entity……………………………………………………………..28
Federal Share ................................................................................................................... 12
FHWA ................................................................................................................................ 7
NOFO ................................................................................................................................. 6
OMB ................................................................................................................................. 13
Program Statute ............................................................................................................... 31
Project……………………………………………………………………………………22
Project Closeout .............................................................................................................. 18
SS4A Grant ...................................................................................................................... 31
USDOT ............................................................................................................................... 6

**GENERAL TERMS AND CONDITIONS**

The Infrastructure Investment and Jobs Act (IIJA; Pub. L. 117–58, November 15, 2021) established the Safe Streets and Roads for All (the "SS4A") Discretionary Grant Program (IIJA Section 24112) and appropriated funds to the United States Department of Transportation (the "**USDOT**") under Division J, Title VIII of IIJA to implement the program. The funds are available to provide Federal financial assistance to support local initiatives to prevent death and serious injury on roads and streets, commonly referred to as "Vision Zero" or "Toward Zero Deaths" initiatives.

The USDOT published a Notice of Funding Opportunity (the "**NOFO**") to solicit applications for Federal financial assistance in Fiscal Year 2023 for the SS4A Discretionary Grant Program (88 Fed. Reg. 22090, April 12, 2023).

These general terms and conditions are incorporated by reference in a project-specific grant agreement under the fiscal year 2023 SS4A grant program. Articles 1–6 are in the project-specific portion of the agreement. The term "Recipient" is defined in the project-specific portion of the agreement. Attachments A through F are project-specific attachments.

**ARTICLE 7
PURPOSE**

7.1     **Purpose.** The purpose of this award is to improve roadway safety by significantly reducing or eliminating roadway fatalities and serious injuries through safety action plan development or projects focused on all users, including pedestrians, bicyclists, public transportation users, motorists, personal conveyance and micromobility users, and commercial vehicle operators. The parties will accomplish that purpose by achieving the following objectives:

(1)     timely completing the Project; and

(2)     ensuring that this award does not substitute for non-Federal investment in the Project, except as proposed in the Grant Application, as modified by section 3.3 and Attachment B.

**ARTICLE 8
USDOT ROLE**

8.1     **Division of USDOT Responsibilities.**

(a) The Office of the Secretary of Transportation is ultimately responsible for the USDOT's administration of the SS4A Grant Program.

(b) The Federal Highway Administration (the "**FHWA**") will administer this grant agreement on behalf of the USDOT. In this agreement, the "**Administering Operating Administration**" means the FHWA.

**8.2    USDOT Program Contact.**

Safe Streets and Roads for All
Federal Highway Administration
Office of Safety
1200 New Jersey Avenue SE
HSSA-1, Mail Drop E71-117
Washington, DC 20590
SS4A.FHWA@dot.gov
(202) 366-2822

# ARTICLE 9
## RECIPIENT ROLE

**9.1    Statements on the Project.** The Recipient states that:

(1)    all material statements of fact in the Grant Application were accurate when that application was submitted; and

(2)    Attachment B documents all material changes in the information contained in that application.

**9.2    Statements on Authority and Capacity.** The Recipient states that:

(1)    it has the authority to receive Federal financial assistance under this agreement;

(2)    it has the legal authority to complete the Project, including either ownership and/or maintenance responsibilities over a roadway network; safety responsibilities that affect roadways; or has an agreement from the agency that has ownership and/or maintenance responsibilities for the roadway within the applicant's jurisdiction; if applicable;

(3)    it has the capacity, including institutional, managerial, and financial capacity, to comply with its obligations under this agreement;

(4)    not less than the difference between the "Total Eligible Project Cost" and the "SS4A Grant Amount" listed in section 3.3 are committed to fund the Project;

(5)    it has sufficient funds available, or an agreement with the agency that has ownership and/or maintenance responsibilities for the roadway within the recipient's jurisdiction, to ensure that infrastructure completed or improved under this agreement will be operated and maintained in compliance with this agreement and applicable Federal law; and

(6)    the individual executing this agreement on behalf of the Recipient has authority to enter this agreement and make the statements in this article 9 and in section 24.7 on behalf of the Recipient.

**9.3    USDOT Reliance.** The Recipient acknowledges that:

(1)    the USDOT relied on statements of fact in the Grant Application to select the Project to receive this award;

(2)    the USDOT relied on statements of fact in both the Grant Application and this agreement to determine that the Recipient and the Project are eligible under the terms of the NOFO;

(3)    the USDOT relied on statements of fact in both the Grant Application and this agreement to establish the terms of this agreement; and

(4)    the USDOT's selection of the Project to receive this award prevented awards under the NOFO to other eligible applicants.

**9.4    Project Delivery.**

(a) The Recipient shall complete the Project under the terms of this agreement.

(b) The Recipient shall ensure that the Project is financed, constructed, operated, and maintained in accordance with all applicable Federal laws, regulations, and policies.

(c) The Recipient shall provide any certifications or assurances deemed necessary by the USDOT in ensuring the Recipient's compliance with all applicable laws, regulations, and policies.

(d) The Recipient shall provide access to records as provided at 2 C.F.R. 200.337.

**9.5    Rights and Powers Affecting the Project.**

(a) The Recipient shall not take or permit any action that deprives it of any rights or powers necessary to the Recipient's performance under this agreement without written approval of the USDOT.

(b) The Recipient shall act, in a manner acceptable to the USDOT, promptly to acquire, extinguish, or modify any outstanding rights or claims of right of others that would interfere with the Recipient's performance under this agreement.

**9.6    Notification of Changes to Key Personnel.** The Recipient shall notify all USDOT representatives who are identified in Section 4.3 in writing within 30 calendar days of any change in key personnel who are identified in Section 4.2.

## ARTICLE 10
## AWARD AMOUNT, OBLIGATION, AND TIME PERIODS

**10.1    Federal Award Amount** The USDOT hereby awards a SS4A Grant to the Recipient in the amount listed in section 2.2 as the SS4A Grant Amount.

**10.2    Federal Obligations.**

This agreement obligates funds for the period of performance listed on Page 1, Block 6 of the grant agreement.

(a) If the Federal Obligation Type identified in section 2.3 is "Single," then the project-specific agreement obligates for the budget period the amount listed in section 2.2. as the Grant Amount and sections 10.2 (c)–10.2(f) do not apply to the project specific agreement.

(b) If the Federal Obligation Type identified in section 2.3 is "Multiple," (for phased agreements) then an amount up to the Grant Amount listed in section 2.2 will be obligated with one initial obligation and one or more subsequent, optional obligations, as described in sections 10.2(c)–10.2(f).

(c) The Obligation Condition Table in section 2.3 allocates the Grant funds among separate phases of the Project for the purpose of the Federal obligation of funds. The scope of each phase of the Project that is identified in that table is described in section 2.3.

(d) The project-specific agreement obligates for the budget period only the amounts allocated in the Obligation Condition Table in section 2.3 to portions of the Project for which that table does not list an obligation condition.

(e) The project-specific agreement does not obligate amounts allocated in the Obligation Condition Table in section 2.3 to portions of the Project for which that table lists an obligation condition. The parties may obligate the amounts allocated to those portions of the Project only by modifying the project specific agreement under section 21.

(f) For each portion of the Project for which the Obligation Condition Table in section 2.3 lists an obligation condition, the amount allocated in that table to that portion of the Project will be obligated if the condition is met not later than the date listed in Section 2.4 of the project-specific agreement.

(g) For any portion of the Project for which the Obligation Condition Table in section 2.3 lists an obligation condition, if the obligation condition is satisfied, the parties amend this agreement documenting that:

> (1) the FHWA determines that the obligation condition listed in that table for that portion of the Project is satisfied; and

(2) the FHWA determines that all applicable Federal requirements for obligating the amount are satisfied.

(h) The Recipient shall not request reimbursement of costs for a portion of the Project for which the Obligation Condition Table in section 2.3 lists an obligation condition, unless the amount allocated in that table to that portion of the Project is obligated under section 10.2(c)-(f).

(i) Reserved.

(j) The Recipient acknowledges that:

(1) the FHWA is not liable for payments for a portion of the Project for which the Obligation Condition Table in section 2.3 lists an obligation condition, unless the amount allocated in that table to that portion of the Project is obligated under section 10.2(c)-(f);

(2) any portion of the Grant that is not obligated under this section 10.2 by the budget period end date identified in the project-specific agreement for those funds lapses on the day after that date and becomes unavailable for the Project; and

(3) the FHWA may consider the failure to obligate funds by the budget period end date identified in the project-specific agreement as applicable to the Grant Program for those funds to be a basis for terminating the project-specific agreement under section 16.

### 10.3    Budget Period

The budget period for this award begins on the effective date of this agreement and ends on the budget period end date that is listed in section 2.4, which shall be no later than 5 years from the date of grant execution. In this agreement, "budget period" is used as defined at 2 C.F.R. 200.1.

### 10.4    Period of Performance.

(a) The period of performance for this award begins on the effective date of award listed in page 1 item 2 and ends on the period of performance end date that is listed in Page 1, Block 6.

(b) In this agreement, "period of performance" is used as defined at 2 C.F.R. 200.1.

**ARTICLE 11**
**STATEMENT OF WORK, SCHEDULE, AND BUDGET CHANGES**

11.1    **Notification Requirement.** The Recipient shall notify all USDOT representatives who are identified in section 4.4 in writing within 30 calendar days of any change in circumstances or commitments that adversely affect the Recipient's plan to complete the Project. In that notification, the Recipient shall describe the change and what actions the Recipient has taken or plans to take to ensure completion of the Project. This notification requirement under this section 11.1 is separate from any requirements under this article 11 that the Recipient request amendment of this agreement.

11.2    **Statement of Work Changes.** If the Project's activities differ from the statement of work that is described in section 3.1 and Attachment B, then the Recipient shall request an amendment of this agreement to update section 3.1.

11.3    **Schedule Changes.** If one or more of the following conditions are satisfied, then the Recipient shall request an amendment of this agreement to update the relevant dates:

(1)    a substantial completion date for the Project or a component of the Project that is listed in section 3.2 and the Recipient's estimate for that milestone changes to a date that is more than six months after the date listed in section 3.2; or

(2)    a schedule change would require the period of performance to continue after the period of performance end date listed on Page 1, Block 6.  (i.e., for projects with multiple phases, changes to the base phase budget period end date for projects with two phases, or changes to base or secondary phase budget period end dates for projects with three phases, etc., will not trigger notification/modification requirements).

For other schedule changes, the Recipient shall request an amendment of this agreement unless the USDOT has consented, in writing consistent with applicable requirements, to the change.

11.4    **Budget Changes.**

(a) The Recipient acknowledges that if the cost of completing the Project increases:

(1)    that increase does not affect the Recipient's obligation under this agreement to complete the Project; and

(2)    the USDOT will not increase the amount of this award to address any funding shortfall.

(b) The Recipient shall request an amendment of this agreement to update section 3.3 and Attachment B if, in comparing the Project's budget to the amounts listed in section 3.3:

(1)    the "Non-Federal Funds" amount decreases; or

(2)    the "Total Eligible Project Cost" amount decreases.

(c) For budget changes that are not identified in section 11.4(b), the Recipient shall request an amendment of this agreement to update section 3.3 and Attachment B unless the USDOT has consented, in writing consistent with applicable requirements, to the change.

(d) If the actual eligible project costs are less than the "Total Eligible Project Cost" that is listed in section 3.3, then the Recipient may propose to the USDOT, in writing consistent with applicable requirements, specific additional activities that are within the scope of this award, as defined in sections 7.1 and 3.1, and that the Recipient could complete with the difference between the "Total Eligible Project Cost" that is listed in section 3.3 and the actual eligible project costs.

(e) If the actual eligible project costs are less than the "Total Eligible Project Cost" that is listed in section 3.3 and either the Recipient does not make a proposal under section 11.4(d) or the USDOT does not accept the Recipient's proposal under section 11.4(d), then:

(1)    in a request under section 11.4(b), the Recipient shall reduce the Federal Share by the difference between the "Total Eligible Project Cost" that is listed in section 3.3 and the actual eligible project costs; and

(2)    if that amendment reduces this award and the USDOT had reimbursed costs exceeding the revised award, the Recipient shall request to add additional project work that is within the scope of this project.

In this agreement, "**Federal Share**" means the sum of the "SS4A Grant Amount" and the "Other Federal Funds" amounts that are listed in section 3.3(a).

(f) The Recipient acknowledges that amounts that are required to be refunded under section 11.4(e)(2) constitute a debt to the Federal Government that the USDOT may collect under 2 C.F.R. 200.346 and the Standards for Administrative Collection of Claims (31 C.F.R. part 901).

**11.5   USDOT Acceptance of Changes.** The USDOT may accept or reject amendments requested under this article 11, and in doing so may elect to consider only the interests of the SS4A grant program and the USDOT. The Recipient acknowledges that requesting an amendment under this article 11 does not amend, modify, or supplement this agreement unless the USDOT accepts that amendment request and the parties modify this agreement under section 21.1.

**ARTICLE 12**
**GENERAL REPORTING TERMS**

**12.1**  **Report Submission.** The Recipient shall send all reports required by this agreement to all USDOT contacts who are listed in section 4.4. Reports will be added to a central repository maintained by FHWA.

**12.2**  **Alternative Reporting Methods.** FHWA may establish processes for the Recipient to submit reports required by this agreement, including electronic submission processes. If the Recipient is notified of those processes in writing, the Recipient shall use the processes required by the FHWA.

**12.3**  **Paperwork Reduction Act Notice.**

Under 5 C.F.R. 1320.6, the Recipient is not required to respond to a collection of information that does not display a currently valid control number issued by the Office of Management and Budget (the "**OMB**"). Collections of information conducted under this agreement are approved under OMB Control No. 2125-0675.

**ARTICLE 13**
**PROGRESS AND FINANCIAL REPORTING**

**13.1**  **Quarterly Performance Progress Reports.** Quarterly, on or before the 20th day of the first month of each calendar year (e.g., reports due on or before January 20th, April 20th, July 20th, and October 20th) and until the end of the period of performance, the Recipient shall submit to the USDOT a Quarterly Performance Progress Report in the format and with the content described in Exhibit C. If the date of this agreement is in the final month of a calendar year, then the Recipient shall submit the first Quarterly Performance Progress Report in the second calendar year quarter that begins after the date of this agreement.

**13.2**  **Quarterly Financial Status.** Quarterly, on or before the 20th day of the first month of each calendar year (e.g., reports due on or before January 20th, April 20th, July 20th, and October 20th) and until the end of the period of performance, the Recipient shall submit a Federal Financial Report using SF-425.

**ARTICLE 14**
**PERFORMANCE REPORTING**

**14.1**  **Baseline Performance Measurement.** Recipients of Implementation Grants or Planning and Demonstration Grants with demonstration activities shall:

(1)     collect data for each performance measure that is identified in the Performance Measure Table in Attachment A, accurate as of the Baseline Measurement Date that is identified in Attachment A; and

(2)     on or before the Baseline Report Date that is stated in Attachment A, the Recipient shall submit a Baseline Performance Measurement Report that contains the data collected under this section 14.1 and a detailed description of the data sources, assumptions, variability, and estimated levels of precision for each performance measure that is identified in the Performance Measure Table in Attachment A.

**14.2    SS4A Final Report:** The Recipient shall submit to the USDOT, not later than 120 days after the end of the period of performance, a report in the format specified by FHWA and with the content described in Attachment A that describes, consistent with sections 24112(g)-(h) of IIJA:

(1)     the costs of each eligible project and strategy carried out using the grant;

(2)     the roadway safety outcomes and any additional benefits (e.g., increased walking, biking, or transit use without a commensurate increase in serious and fatal crashes, etc.) that each such project and strategy has generated, as—

- identified in the grant application; and

- measured by data to the maximum extent practicable; and

(3)     [RESERVED]

(4)     the lessons learned, and any recommendations related to future projects or strategies to prevent death and serious injuries on roads and streets.

**14.3    Performance Measurement Information.**

For each performance measure identified to be submitted annually in the Performance Measure Table in Attachment A, not later than January 31 of each year, the Recipient shall submit to the USDOT a Performance Measurement Report containing the data collected in the previous calendar year and stating the dates when the data was collected.

**14.4    Performance Reporting Survival.**

The data collection and reporting requirements in this article 14 survive the termination of this agreement which is three years post period of performance.

**14.5    Program Evaluation.**

As a condition of grant award, the recipient may be required to participate in an evaluation undertaken by USDOT, or another agency or partner. The evaluation may take different forms such as an implementation assessment across grant recipients, an impact and/or outcomes analysis of all or selected sites within or across grant

recipients, before/after photographs of the sites, qualitative activities such as videos describing the project and its impact on the community, or a benefit/cost analysis or assessment of return on investment. The Department may require applicants to collect data elements to aid the evaluation. As a part of the evaluation, as a condition of award, grant recipients must agree to: (1) make records available to the evaluation contractor; (2) provide access to program records, and any other relevant documents to calculate costs and benefits; (3) in the case of an impact analysis, facilitate the access to relevant information as requested; and (4) follow evaluation procedures as specified by the evaluation contractor or USDOT staff.

## ARTICLE 15
## NONCOMPLIANCE AND REMEDIES

**15.1    Noncompliance Determinations.**

(a) If the USDOT determines that the Recipient may have failed to comply with the United States Constitution, Federal law, or the terms and conditions of this agreement, the USDOT may notify the Recipient of a proposed determination of noncompliance. For the notice to be effective, it must be written and the USDOT must include an explanation of the nature of the noncompliance, describe a remedy, state whether that remedy is proposed or effective at an already determined date, and describe the process through and form in which the Recipient may respond to the notice.

(b) If the USDOT notifies the Recipient of a proposed determination of noncompliance under section 15.1(a), the Recipient may, not later than 7 calendar days after the notice, respond to that notice in the form and through the process described in that notice. In its response, the Recipient may:

   (1)    accept the remedy;

   (2)    acknowledge the noncompliance, but propose an alternative remedy; or

   (3)    dispute the noncompliance.

   To dispute the noncompliance, the Recipient must include in its response documentation or other information supporting the Recipient's compliance.

(c) The USDOT may make a final determination of noncompliance only:

   (1)    after considering the Recipient's response under section 15.1(b); or

   (2)    if the Recipient fails to respond under section 15.1(b), after the time for that response has passed.

(d) To make a final determination of noncompliance, the USDOT must provide a notice to the Recipient that states the basis for that determination.

**15.2    Remedies.**

(a) If the USDOT makes a final determination of noncompliance under section 15.1(d), the USDOT may impose a remedy, including:

    (1)    additional conditions on the award;

    (2)    any remedy permitted under 2 C.F.R. 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs, requiring refunds from the Recipient to USDOT; suspension or termination of the award; or suspension and disbarment under 2 C.F.R. part 180; or

    (3)    any other remedy legally available.

(b) To impose a remedy, the USDOT must provide a written notice to the Recipient that describes the remedy, but the USDOT may make the remedy effective before the Recipient receives that notice.

(c) If the USDOT determines that it is in the public interest, the USDOT may impose a remedy, including all remedies described in section 15.2(a), before making a final determination of noncompliance under section 15.1(d). If it does so, then the notice provided under section 15.1(d) must also state whether the remedy imposed will continue, be rescinded, or modified.

(d) In imposing a remedy under this section 15.2 or making a public interest determination under section 15.2(c), the USDOT may elect to consider the interests of only the USDOT.

(e) The Recipient acknowledges that amounts that the USDOT requires the Recipient to refund to the USDOT due to a remedy under this section 15.2 constitute a debt to the Federal Government that the USDOT may collect under 2 C.F.R. 200.346 and the Standards for Administrative Collection of Claims (31 C.F.R. part 901).

**15.3    Other Oversight Entities.**

Nothing in this article 15 limits any party's authority to report activity under this agreement to the United States Department of Transportation Inspector General or other appropriate oversight entities.

**ARTICLE 16**
**AGREEMENT TERMINATION**

**16.1    USDOT Termination.**

(a) The USDOT may terminate this agreement and all its obligations under this agreement if any of the following occurs:

(1)    the Recipient fails to obtain or provide any non-SS4A Grant contribution (all eligible project costs other than the SS4A Grant Amount, as described in section 3.3(a) of the grant agreement) or alternatives approved by the USDOT as provided in this agreement and consistent with article 3;

(2)    a construction start date for the project or strategy is listed in section 3.2 and the Recipient fails to meet that milestone by six months after the date listed in section 3.2;

(3)    a substantial completion date for the project or strategy is listed in section 3.2 and the Recipient fails to meet that milestone by six months after the date listed in section 3.2;

(4)    the Recipient fails to comply with the terms and conditions of this agreement, including a material failure to comply with the schedule in section 3.2 even if it is beyond the reasonable control of the Recipient; or,

(5)    the USDOT determines that termination of this agreement is in the public interest.

(6)    the Recipient fails to expend the funds within 5 years after the date on which the government executes the grant agreement, which is the date funds are provided for the project.

(b) In terminating this agreement under this section, the USDOT may elect to consider only the interests of the USDOT.

(c) This section 16.1 does not limit the USDOT's ability to terminate this agreement as a remedy under section 15.2.

(d) The Recipient may request that the USDOT terminate the agreement under this section 16.1.

**16.2    Closeout Termination.**

(a) This agreement terminates on Project Closeout.

(b) In this agreement, "**Project Closeout**" means the date that the USDOT notifies the Recipient that the award is closed out. Under 2 C.F.R. 200.344, Project Closeout should occur no later than one year after the end of the period of performance.

**16.3    Post-Termination Adjustments.** The Recipient acknowledges that under 2 C.F.R. 200.345–200.346, termination of the agreement does not extinguish the USDOT's authority to disallow costs, including costs that USDOT reimbursed before termination, and recover funds from the Recipient.

**16.4    Non-Terminating Events.**

(a) The end of the period of performance described under section 10.4 does not terminate this agreement or the Recipient's obligations under this agreement.

(b) The liquidation of funds under section 20.1 does not terminate this agreement or the Recipient's obligations under this agreement.

**16.5    Other Remedies.** The termination authority under this article 16 supplements and does not limit the USDOT's remedial authority under article 15 or 2 C.F.R. part 200, including 2 C.F.R. 200.339–200.340.

## ARTICLE 17
## MONITORING, FINANCIAL MANAGEMENT, CONTROLS, AND RECORDS

**17.1    Recipient Monitoring and Record Retention.**

(a) The Recipient shall monitor activities under this award, including activities under subawards and contracts, to ensure:

(1)    that those activities comply with this agreement; and

(2)    that funds provided under this award are not expended on costs that are not allowable under this award or not allocable to this award.

(b) If the Recipient makes a subaward under this award, the Recipient shall monitor the activities of the subrecipient in compliance with 2 C.F.R. 200.332(e).

(c) The Recipient shall retain records relevant to the award as required under 2 C.F.R. 200.334.

**17.2    Financial Records and Audits.**

(a) The Recipient shall keep all project accounts and records that fully disclose the amount and disposition by the Recipient of the award funds, the total cost of the project, and the amount or nature of that portion of the cost of the project supplied by other sources, and any other financial records related to the project.

(b) The Recipient shall keep accounts and records described under section 17.2(a) in accordance with a financial management system that meets the requirements of 2 C.F.R. 200.302–200.307, 2 C.F.R. part 200, subpart F, and title 23, United States Code, and will facilitate an effective audit in accordance with 31 U.S.C. 7501–7506.

(c) The Recipient shall separately identify expenditures under the fiscal year 2023 SS4A grants program in financial records required for audits under 31 U.S.C. 7501–7506. Specifically, the Recipient shall:

(1)    list expenditures under that program separately on the schedule of expenditures of Federal awards required under 2 C.F.R. part 200, subpart F, including "FY 2023" in the program name; and

(2)    list expenditures under that program on a separate row under Part II, Item 1 ("Federal Awards Expended During Fiscal Period") of Form SF-SAC, including "FY 2023" in column c ("Additional Award Identification").

**17.3    Internal Controls.** The Recipient shall establish and maintain internal controls as required under 2 C.F.R. 200.303.

**17.4    USDOT Record Access.** The USDOT may access Recipient records related to this award under 2 C.F.R. 200.337.

# ARTICLE 18
# CONTRACTING AND SUBAWARDS

**18.1    Build America, Buy America.** This award term implements § 70914(a) of the Build America, Buy America Act, Pub. L. No. 117-58, div. G, tit. IX, subtitle A, 135 Stat. 429, 1294 (2021), 2 CFR part 184, and Office of Management and Budget (OMB) Memorandum M-24-02, "Initial Implementation Guidance on Application of Buy America Preference in Federal Financial Assistance Programs for Infrastructure."

*Requirement to Use Iron, Steel, Manufactured Products, and Construction Materials Produced in the United States.*

The Recipient shall not use funds provided under this award for a project for infrastructure unless:

(1)    all iron and steel used in the project are produced in the United States—this means all manufacturing processes, from the initial melting stage through the application of coatings, occurred in the United States;

(2)    all manufactured products used in the project are produced in the United States—this means the manufactured product was manufactured in the United States; and the cost of the components of the manufactured product that are mined, produced, or manufactured in the United States is greater than 55 percent of the total cost of all components of the manufactured product; and

(3)    all construction materials are manufactured in the United States—this means that all manufacturing processes for the construction material occurred in the United States.

*Inapplicability.*

The domestic content procurement preference in this award term only applies to articles, materials, and supplies that are consumed in, incorporated into, or affixed to an infrastructure project. As such, it does not apply to tools, equipment, and supplies, such as temporary scaffolding, brought to the construction site and removed at or before the completion of the infrastructure project. Nor does a Buy America preference apply to equipment and furnishings, such as movable chairs, desks, and portable computer equipment, that are used at or within the finished infrastructure

project but are not an integral part of the structure or permanently affixed to the infrastructure project.

*Waivers.*

When necessary, the Recipient may apply for, and the USDOT may grant, a waiver from the domestic content procurement preference in this award term.

A request to waive the application of the domestic content procurement preference must be in writing. The USDOT will provide instructions on the waiver process and on the format, contents, and supporting materials required for any waiver request. Waiver requests are subject to public comment periods of no less than 15 days and must be reviewed by the Office of Management and Budget (OMB) Made in America Office.

When the USDOT has made a determination that one of the following exceptions applies, the awarding official may waive the application of the domestic content procurement preference in any case in which the USDOT determines that:

(1)    applying the domestic content procurement preference would be inconsistent with the public interest;

(2)    the types of iron, steel, manufactured products, or construction materials are not produced in the United States in sufficient and reasonably available quantities or of a satisfactory quality; or

(3)    the inclusion of iron, steel, manufactured products, or construction materials produced in the United States will increase the cost of the overall project by more than 25 percent.

There may be instances where an award qualifies, in whole or in part, for an existing waiver described at https://www.transportation.gov/office-policy/transportation-policy/made-in-america.

*Definitions*

"Construction materials" means articles, materials, or supplies —that consist of only one of the items listed below in paragraph (1) of this definition, except as provided in paragraph (2) of this definition. To the extent that one of the items listed in paragraph (1) contains as inputs other items listed in paragraph (1), it is nonetheless a construction material:

(1) The listed Items are:
  •   non-ferrous metals;
  •   plastic and polymer-based products (including polyvinylchloride, composite building materials, and polymers used in fiber optic cables);
  •   glass (including optic glass);
  •   fiber optic cable (including drop cable)
  •   optical fiber;

- lumber;
- engineered wood; and
- drywall.

(2) Minor additions of articles, materials, supplies, or binding agents to a construction material do not change the categorization of the construction material.

"Domestic content procurement preference" means all iron and steel used in the project are produced in the United States; the manufactured products used in the project are produced in the United States; or the construction materials used in the project are produced in the United States.

"Iron or steel products" means articles, materials, or supplies that consist wholly or predominantly or iron or steel or a combination of both.

"Manufactured products" means:

(1) Articles, materials, or supplies that have been: (i) Processed into a specific form and shape; or (ii) combined with other articles, materials, or supplies to create a product with different properties than the individual articles, materials, or supplies.

(2) If an item is classified as an iron or steel product, a construction material, or a Section 70917(c) material under 2 CFR 184.4(e) and the definitions set forth in 2 CFR 184.3, then it is not a manufactured product. However, an article, material, or supply classified as a manufactured product under 2 CFR 184.4(e) and paragraph (1) of this definition may include components that are construction materials, iron or steel products, or Section 70917(c) materials.

"Predominantly of iron or steel or a combination of both" means that the cost of the iron and steel content exceeds 50 percent of the total cost of all its components. The cost of iron and steel is the cost of the iron or steel mill products (such as bar, billet, slab, wire, plate, or sheet), castings, or forging utilized in the manufacture of the product and a good faith estimate of the cost of iron or steel components.

**"Project"** means temporary or permanent construction, alteration, maintenance, or repair of infrastructure in the United States.

"Section 70917(c) materials" cement and cementitious materials; aggregates such as stone, sand, or gravel; or aggregate binding agents or additives.

**18.2    Small and Disadvantaged Business Requirements.** The Recipient shall expend all funds under this award in compliance with the requirements at 2 C.F.R. 200.321 including any amendments thereto.

**18.3    Engineering and Design Services.** The Recipient shall award each contract or sub-contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering,

surveying, mapping, or related services with respect to the project in the same manner that a contract for architectural and engineering services is negotiated under 2 C.F.R. 200.320 or an equivalent qualifications-based requirement prescribed for or by the Recipient.

18.4    **Foreign Market Restrictions.** The Recipient shall not allow funds provided under this award to be used to fund the use of any product or service of a foreign country during the period in which such foreign country is listed by the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

18.5    **Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment.** The Recipient acknowledges that Section 889 of Pub. L. No. 115-232, 2 C.F.R. 200.216 and 2 C.F.R. 200.471 prohibit the Recipient and all subrecipients from procuring or obtaining certain telecommunications and video surveillance services or equipment under this award.

18.6    **Recipient Responsibilities for Subawards.** If the Recipient makes a subaward under this award, the Recipient shall comply with the requirements on pass-through entities under 2 C.F.R. parts 200 and 1201, including 2 C.F.R. 200.331–200.333.

18.7    **Subaward and Contract Authorization.**  If the USDOT Office for Subaward Authorization identified in section 5.1 is "FHWA Office of Acquisition and Grants Management," then the Recipient must follow the requirements in 2 C.F.R. 200.308 (f)(6) and 2 C.F.R. 200.333, as applicable, for the subaward of any SS4A Grant work under the Project-Specific Agreement. Approvals under 2 CFR 200.308(f)(6) do not apply to the procurement acquisition of goods and services.

### ARTICLE 19
### COSTS, PAYMENTS, AND UNEXPENDED FUNDS

19.1    **Limitation of Federal Award Amount.** Under this award, the USDOT shall not provide funding greater than the amount obligated on the SS4A Grant cover page, Item 11, Federal Funds Obligated.  The Recipient acknowledges that USDOT is not liable for payments exceeding that amount, and the Recipient shall not request reimbursement of costs exceeding that amount.

19.2    **Projects Costs.** This award is subject to the cost principles at 2 C.F.R. part 200 subpart E, including provisions on determining allocable costs and determining allowable costs.

**19.3    Timing of Project Costs.**

(a)  The Recipient shall not charge to this award costs that are incurred after the period of performance.

(b)  The Recipient shall not charge to this award costs that were incurred before the effective date of award of this agreement, unless there has been an approval of pre-award costs under 2 C.F.R. 200.458.

**19.4    Recipient Recovery of Federal Funds.** The Recipient shall make all reasonable efforts, including initiating litigation, if necessary, to recover Federal funds if the USDOT determines, after consultation with the Recipient, that those funds have been spent fraudulently, wastefully, or in violation of Federal laws, or misused in any manner under this award. The Recipient shall not enter a settlement or other final position, in court or otherwise, involving the recovery of funds under the award unless approved in advance in writing by the USDOT.

**19.5    Unexpended Federal Funds.** Any Federal funds that are awarded at section 10.1 but not expended on allocable, allowable costs remain the property of the United States.

**19.6    Timing of Payments to the Recipient.** When reimbursement is used, the Recipient shall    not request reimbursement of a cost before the Recipient has entered an obligation for that cost.

**19.7    Payment Method.** The USDOT may deny a payment request that is not submitted using the method identified in section 5.2.

**19.8    Information Supporting Expenditures**

(a)  If the USDOT Payment System identified in section 5.2 is "DELPHI iSupplier," then when requesting reimbursement of costs incurred or credit for cost share incurred, the Recipient shall electronically submit the SF-270 (Request for Advance or Reimbursement) or SF-271 (Outlay Report and Request for Reimbursement for Construction Programs), shall identify the Federal share and the Recipient's share of costs, and shall submit supporting cost detail to clearly document all costs incurred. As supporting cost detail, the Recipient shall include a detailed breakout of all costs incurred, including direct labor, indirect costs, other direct costs, and travel.

(b)  If the Recipient submits a request for reimbursement that the USDOT determines does not include or is not supported by sufficient detail, the USDOT may deny the request or withhold processing the request until the Recipient provides sufficient detail.

**19.9    Reimbursement Frequency.** If the USDOT Payment System identified in section 5.2 is "DELPHI iSupplier," then the Recipient shall not request reimbursement more frequently than monthly.

**19.10   Match.** The recipient should show on each request for reimbursement that at least 20 percent of the incurred costs will count towards match. If the recipient intends to vary the match percentage over the life of the project, it must communicate its plan to

USDOT. The recipient is responsible for tracking match according to the plan.  At the completion of the grant award, the cost share requirement must be met, and Federal funds must not exceed the project's Federal share.

## ARTICLE 20
## LIQUIDATION, ADJUSTMENTS, AND FUNDS AVAILABILITY

**20.1    Liquidation of Recipient Obligations.**

(a)  The Recipient shall liquidate all obligations of award funds under this agreement not later than the earlier of (1) 120 days after the end of the period of performance or (2) the statutory availability to eligible entities date, which shall be 5 years after the date on which the grant is provided.

(b)  Liquidation of obligations and adjustment of costs under this agreement follow the requirements of 2 C.F.R. 200.344–200.346.

## ARTICLE 21
## AGREEMENT MODIFICATIONS

**21.1    Bilateral Amendments.** The parties may amend, modify, or supplement this agreement by mutual agreement in writing signed by the USDOT and the Recipient. Either party may request to amend, modify, or supplement this agreement by written notice to the other party.

**21.2    Unilateral Contact Modifications.**

(a)  The USDOT may update the contacts who are listed in sections 4.4 by written notice to all of the Recipient contacts who are listed in section 4.3.

**21.3    USDOT Unilateral Modifications.**

(a)  The USDOT may unilaterally modify this agreement to comply with Federal law, including the Program Statute.

(b)  To unilaterally modify this agreement under this section 21.3(a), the USDOT must provide a notice to the Recipient that includes a description of the modification and state the date that the modification is effective.

**21.4    Other Modifications.** The parties shall not amend, modify, or supplement this agreement except as permitted under sections 21.1, 21.2, or 21.3. If an amendment, modification, or supplement is not permitted under section 21.1, not permitted under section 21.2, and not permitted under section 21.3, it is void.

**ARTICLE 22**
**[RESERVED]**


**ARTICLE 23**
**[RESERVED]**


**ARTICLE 24**
**FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL POLICY REQUIREMENTS**

**24.1    Uniform Administrative Requirements for Federal Awards.** The Recipient shall comply with the obligations on non-Federal entities under 2 C.F.R. parts 200 and 1201.

**24.2    Federal Law and Public Policy Requirements.**

(a) The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(b) Pursuant to Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(c) Pursuant to Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

(d) The failure of this agreement to expressly identify Federal law applicable to the Recipient or activities under this agreement does not make that law inapplicable.

**24.3    Federal Freedom of Information Act.**

(a) The USDOT is subject to the Freedom of Information Act, 5 U.S.C. 552.

(b) The Recipient acknowledges that the Technical Application and materials submitted to the USDOT by the Recipient related to this agreement may become USDOT records subject to public release under 5 U.S.C. 552.

**24.4    History of Performance.** Under 2 C.F.R 200.206, any Federal agency may consider the Recipient's performance under this agreement when evaluating the risks of making a future Federal financial assistance award to the Recipient.

**24.5    Whistleblower Protection.**

(a)  The Recipient acknowledges that it is a "grantee" within the scope of 41 U.S.C. 4712, which prohibits the Recipient from taking certain actions against an employee for certain disclosures of information that the employee reasonably believes are evidence of gross mismanagement of this award, gross waste of Federal funds, or a violation of Federal law related this this award.

(b)  The Recipient shall inform its employees in writing of the rights and remedies provided under 41 U.S.C. 4712, in the predominant native language of the workforce.

**24.6    External Award Terms and Obligations.**

(a)  In addition to this document and the contents described in article 29, this agreement includes the following additional terms as integral parts:

  (1)    Appendix A to 2 C.F.R. part 25: System for Award Management and Universal Identifier Requirements;

  (2)    Appendix A to 2 C.F.R. part 170: Reporting Subawards and Executive Compensation;

  (3)    2 C.F.R part 175: Award Term for Trafficking in Persons; and

  (4)    Appendix XII to 2 C.F.R. part 200: Award Term and Condition for Recipient Integrity and Performance Matters.

(b)  The Recipient shall comply with:

  (1)    49 C.F.R. part 20: New Restrictions on Lobbying;

  (2)    49 C.F.R. part 21: Nondiscrimination in Federally-Assisted Programs of the Department of Transportation—Effectuation of Title VI of the Civil Rights Act of 1964;

  (3)    49 C.F.R. part 27: Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance; and

  (4)    Subpart B of 49 C.F.R. part 32: Governmentwide Requirements for Drug-free Workplace (Financial Assistance).

**24.7    Incorporated Certifications.** The Recipient makes the statements in the following certifications, which are incorporated by reference:

  (1)    Appendix A to 49 C.F.R. part 20 (Certification Regarding Lobbying).

## ARTICLE 25
## ASSIGNMENT

**25.1   Assignment Prohibited.** The Recipient shall not transfer to any other entity any discretion granted under this agreement, any right to satisfy a condition under this agreement, any remedy under this agreement, or any obligation imposed under this agreement.

## ARTICLE 26
## WAIVER

**26.1   Waivers.**

(a) A waiver granted by USDOT under this agreement will not be effective unless it is in writing and signed by an authorized representative of USDOT.

(b) A waiver granted by USDOT under this agreement on one occasion will not operate as a waiver on other occasions.

(c) If USDOT fails to require strict performance of a provision of this agreement, fails to exercise a remedy for a breach of this agreement, or fails to reject a payment during a breach of this agreement, that failure does not constitute a waiver of that provision or breach.

## ARTICLE 27
## ADDITIONAL TERMS AND CONDITIONS

**27.1   Effect of Planning and Demonstration or Implementation Award.** Based on information that the Recipient provided to the USDOT, including the Grant Application, as indicated in section 2.5, this agreement designates this award as a Planning and Demonstration award or an Implementation award, as defined in the NOFO. The Recipient shall comply with the requirements that accompany that designation as listed in the FY 2023 Notice of Funding Opportunity for Safe Streets and Roads for All.

**27.2   Disclaimer of Federal Liability.** The USDOT shall not be responsible or liable for any damage to property or any injury to persons that may arise from, or be incident to, performance or compliance with this agreement.

**27.3   Environmental Review**

(a) In this section, **"Environmental Review Entity"** means:

(1) if the Project is located in a State that has assumed responsibilities for environmental review activities under 23 U.S.C. 326 or 23 U.S.C. 327 and the Project is within the scope of the assumed responsibilities, the State; and

(2) for all other cases, the FHWA.

(b) Except as authorized under section 27.3(c), the Recipient shall not begin final design; acquire real property, construction materials, or equipment; begin construction; or take other actions that represent an irretrievable commitment of resources for the Project unless and until:

    (1)    the Environmental Review Entity complies with the National Environmental Policy Act, 42 U.S.C. 4321 to 4370m-12, and any other applicable environmental laws and regulations; and

    (2)    if the Environmental Review Entity is not the Recipient, the Environmental Review Entity provides the Recipient with written notice that the environmental review process is complete.

(c) If the Recipient is using procedures for early acquisition of real property under 23 C.F.R. 710.501 or hardship and protective acquisitions of real property 23 C.F.R. 710.503, the Recipient shall comply with 23 C.F.R. 771.113(d)(1).

(d) The Recipient acknowledges that:

    (1) the Environmental Review Entity's actions under section 27.3(a) depend on the Recipient conducting necessary environmental analyses and submitting necessary documents to the Environmental Review Entity; and

    (2) applicable environmental statutes and regulation may require the Recipient to prepare and submit documents to other Federal, State, and local agencies.

(e) Consistent with 23 C.F.R. 771.105(a), to the extent practicable and consistent with Federal law, the Recipient shall coordinate all environmental investigations, reviews, and consultations as a single process.

(f) The activities described in this agreement may inform environmental decision-making processes, but the parties do not intend this agreement to document the alternatives under consideration under those processes. If a build alternative is selected that does not align information in this agreement, then:

    (1) the parties may amend this agreement under section 21.1 for consistency with the selected build alternative; or

    (2) if the USDOT determines that the condition at section 16.1(a)(5) is satisfied, the USDOT may terminate this agreement under section 16.1(a)(5).

(g) The Recipient shall complete any mitigation activities described in the environmental document or documents for the Project, including the terms and conditions contained in the required permits and authorizations for the Project.

**27.4** **Railroad Coordination.** If the agreement includes one or more milestones identified as a "Railroad Coordination Agreement," then for each of those milestones, the Recipient shall enter a standard written railroad coordination agreement, consistent with 23 C.F.R. 646.216(d), no later than the deadline date identified for that milestone, with the identified railroad for work and operation within that railroad's right-of-way.

**27.5** **Relocation and Real Property Acquisition.**

(a) The Recipient shall comply with the land acquisition policies in 49 C.F.R. part 24 subpart B and shall pay or reimburse property owners for necessary expenses as specified in that subpart.

(b) The Recipient shall provide a relocation assistance program offering the services described in 49 C.F.R. part 24 subpart C and shall provide reasonable relocation payments and assistance to displaced persons as required in 49 C.F.R. part 24 subparts D–E.

(c) The Recipient shall make available to displaced persons, comparable replacement dwellings in accordance with 49 C.F.R. part 24.

**27.6** **Equipment Disposition.**

(a) In accordance with 2 C.F.R. 200.313 and 1201.313, if the Recipient or a subrecipient acquires equipment under this award, then when that equipment is no longer needed for the Project that entity shall request disposition instructions from the FHWA.

(b) In accordance with 2 C.F.R. 200.443(d), the distribution of the proceeds from the disposition of equipment must be made in accordance with 2 C.F.R. 200.310–200.316 and 2 C.F.R. 1201.313.

(c) The Recipient shall ensure compliance with this section (27.6) for all tiers of subawards under this award.

## ARTICLE 28
## MANDATORY AWARD INFORMATION

**28.1** **Information Contained in a Federal Award.** For 2 C.F.R. 200.211:

(1) the "Federal Award Date" is the date of this agreement, as defined under section 30.2;

(2) the "Assistance Listings Number" is 20.939 and the "Assistance Listings Title" is "Safe Streets and Roads for All Grant Program"; and

(3) this award is not for research and development.

**ARTICLE 29**
**CONSTRUCTION AND DEFINITIONS**

29.1 **Attachments.** This agreement includes the following attachments as integral parts unless Attachment D is not required for certain Grants:

| | |
|---|---|
| Attachment A | Performance Measurement Information |
| Attachment B | Changes from Application |
| Attachment C | [RESERVED] |
| Attachment D | [RESERVED] |
| Attachment E | Labor and Workforce |
| Attachment F | Critical Infrastructure Security and Resilience |

29.2 **Exhibits.** The following exhibits, which are in the document titled "Exhibits to FHWA Grant Agreements Under the Fiscal Year 2023 SS4A Grant Program", dated March 17, 2025 and available at https://www.transportation.gov/grants/ss4a/grant-agreements, are part of this agreement.

| | |
|---|---|
| Exhibit A | Applicable Federal Laws and Regulations |
| Exhibit B | Additional Standard Terms |
| Exhibit C | Quarterly Performance Progress Reports: Format and Content |
| Exhibit D | Form for Subsequent Obligation of Funds |

29.3 **Construction.** If a provision in the exhibits or the attachments conflicts with a provision in articles 1–2830, then the provision in articles 1–2830 prevails. If a provision in the attachments conflicts with a provision in the exhibits, then the provision in the attachments prevails.

29.4 **Integration.** This agreement constitutes the entire agreement of the parties relating to the SS4A grant program and awards under that program and supersedes any previous agreements, oral or written, relating to the SS4A grant program and awards under that program.

29.5 **Definitions.** In this agreement, the following definitions apply:

"**Program Statute**" means the IIJA section 24112 and statutory text under the heading "Safe Streets and Roads for All Grants" in title I of division J of the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (November 15, 2021), and all other provisions of that act that apply to amounts appropriated under that heading.

"**Project**" means the project proposed in the Grant Application, as modified by the negotiated provisions of this agreement.

"**SS4A Grant**" means an award of funds that were made available under the SS4A NOFO.

"**Grant Application**" means the application identified in section 2.1, including Standard Form 424 and all information and attachments submitted with that form through Grants.gov.

## ARTICLE 30
## AGREEMENT EXECUTION AND EFFECTIVE DATE

30.1    **Counterparts.** This agreement may be executed in counterparts, which constitute one document. The parties intend each countersigned original to have identical legal effect.

30.2    **Effective Date.** The agreement will become effective when all parties have signed it. The effective date of this agreement will be the date this agreement is signed by the last party to sign it. This instrument constitutes a SS4A Grant when the USDOT's authorized representative signs it.