UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CITY OF CHELSEA and<br>CITY OF SOMERVILLE,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-10442-NMG<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY** |

Plaintiffs file this Response to Defendants' Notice of Supplemental Authority, ECF No. 38, in which Defendants give notice of the Supreme Court's recent decision in *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. __, 2025 WL 2415669 (Aug. 21, 2025) ("*NIH*"). Defendants completely misread the *NIH* decision, citing almost exclusively to the portion of Justice Kavanaugh's opinion in which he **dissents** from the Court's holding. In fact, the *NIH* decision—and in particular Justice Barrett's controlling opinion—makes clear that this Court has jurisdiction over Plaintiffs' claims under the Administrative Procedure Act (APA).[1]

**I.      The *NIH* Proceedings in the District Court and First Circuit**

In *NIH*, and in a companion case consolidated by the district court,[2] the plaintiffs sought two distinct types of relief: they challenged agency directives that halted research funding related to DEI and gender identity; and they sought reinstatement of Resulting Grant Terminations, *i.e.*, grants that NIH had terminated pursuant to the directives. *NIH*, 2025 WL 2415669, at *1 ("NIH

---

[1] Plaintiffs also raise claims directly under the Constitution.  *See* ECF No. 10 (Amended Complaint), ¶¶ 120-156.
[2] *Massachusetts, et al. v. Kennedy, et al.*, No. 1:25-cv-10814 (D. Mass.).

1

issued numerous decisions terminating existing grants, and various plaintiffs sued, challenging the guidance documents and their individual grant terminations under the Administrative Procedure Act.") (Barrett, J., concurring).

The district court granted both forms of relief, as follows:

It is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1. The following Directives from the National Institute of Health ("NIH") and U.S. Department of Health & Human Services ("HHS"), taken as a whole, are **DECLARED** to be final agency action, arbitrary and capricious, and unlawful, in violation of 5 U.S.C. § 706(2)(A): . . . .

2. Pursuant to 5 U.S.C. § 706(2), the Directives set forth in Paragraphs 1(a)-(j) of this Judgment are hereby **OF NO EFFECT, VOID, ILLEGAL, SET ASIDE AND VACATED.**

3. The Resulting Grant Terminations pursuant to the Directives are **DECLARED** to be unlawful, arbitrary and capricious final agency actions under 5 U.S.C. § 706(2)(A).

4. Pursuant to 5 U.S.C. § 706(2), the Resulting Grant Terminations are hereby **OF NO EFFECT, VOID, ILLEGAL, SET ASIDE AND VACATED.**

*NIH*, 2025 WL 1747128, at *1–2 (D. Mass. June 23, 2025).[3] The district court denied the defendants' stay application, *see* 2025 WL 1745899, as did the First Circuit, *see* 145 F.4th 39 (1st Cir. 2025).

II.   **The *NIH* Proceedings in the Supreme Court**

The defendants subsequently filed an application for a stay of the district court's orders in the Supreme Court.  The Supreme Court granted the application as to paragraphs 3 and 4 of the district court's order, *NIH*, 606 U.S. __, 2025 WL 2415669, at *1 ("Paragraphs 3 and 4 of the June

---

[3] For brevity's sake, Plaintiffs have omitted here the eleven listed Directives from Paragraph 1 of the court's order.  *See* 2025 WL 1747128, at *1.  The order in the companion case similarly provided both forms of relief, declaring the directives unlawful (paragraph I) and ruling that the Resulting Grant Terminations were "void, illegal, and of no force and effect . . . ." (paragraph II). *Massachusetts*, 2025 WL 1747213, at *1-2.

23, 2025 order . . . are stayed") but denied the stay as to paragraphs 1 and 2. *Id*. ("The application is otherwise denied."). The Court thus left intact the district court's order that the agency directives were invalid and must be set aside under the APA, granting the stay application only as to those portions of the order that declared illegal and vacated the grant terminations that had already occurred. *Id.*[4]

Several separate opinions followed:

**Justice Barrett** issued an opinion concurring in the partial grant of the stay application. *Id*. at *1-3. Justice Barrett was the only Justice who supported both parts of the Court's ruling: that the challenges to the agency directives were properly before the district court, but that the plaintiffs must go to the Court of Federal Claims (the "CFC") to recoup monies from grant terminations that had already occurred. *See id*.

**Justices Roberts, joined by Justices Sotomayor, Kagan, and Jackson**, issued an opinion concurring in part and dissenting in part. *Id*. at *3. These four Justices concurred with the holding that the challenges to the agency directives belonged in federal district court—and thus with Justice Barrett formed a majority on this issue. *Id*. They, however, would also have held that the district court had jurisdiction over the plaintiffs' attempts to recoup funds that had already been withheld, and so dissented on that point. *Id.*

**Justice Gorsuch, joined by Justice Kavanaugh**, also issued an opinion concurring in part and dissenting in part—essentially adopting the reverse position of Justices Roberts, Sotomayor, Kagan, and Jackson. *Id*. at *3-5. Justices Gorsuch and Kavanaugh dissented from the Court's ruling that the challenges to the agency directives were properly in federal district court, but

---

[4] Similarly for the companion case, the Supreme Court denied a stay of the district court's order as to paragraph I (which set aside the Directives), granting a stay only as to paragraph II (which reinstated grants that had already been terminated). *Id.*; *see also supra* note 3.

3

concurred with the holding that the challenges to already-consummated grant terminations belonged in the CFC. *Id.*

**Justice Kavanaugh** issued a separate opinion concurring in part and dissenting in part, adopting the same bottom-line position as the opinion of Justice Gorsuch that he joined, but elaborating further on his reasoning. *Id*. at *5-6.

**Justice Jackson** issued a separate opinion, concurring and dissenting in part, adopting the same bottom-line position as the opinion of Justice Roberts that she joined, but elaborating further on her reasoning. *Id*. at *6-16.[5]

### III. Impact of *NIH* on This Case

In the instant case, Plaintiffs are seeking invalidation of the challenged Executive Orders and Agency Directives. ECF No. 10 (Amended Complaint) at 62. In contrast to the *NIH* cases, no grants or other federal monies have yet been terminated due to Plaintiffs' sanctuary policies.[6] Accordingly, Plaintiffs' Complaint does not seek recoupment of any terminated funds. ECF No. 10 at 62. As Justice Barrett's controlling opinion explicitly holds, the type of forward-looking relief that Plaintiffs seek in this case is appropriately pursued in this Court:

> Plaintiffs frequently seek vacatur of internal agency guidance on arbitrary-and-capricious grounds in district court or directly in the D. C. Circuit. *See*, *e.g.*, *Ciox Health, LLC v. Azar*, 435 F.Supp.3d 30 (DDC 2020) (challenge to HHS guidance); *POET Biorefining, LLC v. EPA*, 970 F.3d 392 (CADC 2020) (challenge to EPA guidance). That the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim "founded . . . upon" contract that only the CFC can hear. 28 U.S.C. § 1491(a)(1). So the District Court was likely correct to conclude that it had jurisdiction to entertain an APA challenge to the guidance . . . .

---

[5] Justices Thomas and Alito did not issue separate opinions but, like Justices Gorsuch and Kavanaugh, "would grant the application in full." *Id.* at *1.
[6] Defendants themselves expressly highlighted this key distinction in a prior filing: "That case [*NIH*] is distinguishable: at issue there were grant terminations that had already taken place . . . ." *See* ECF No. 34 (Defendants' Response to Plaintiffs' Notice of Supplemental Authority) at 2 n.1.

*NIH*, 2025 WL 2415669, at *2.

In their Notice to this Court, Defendants cite almost exclusively to those portions of Justice Kavanaugh's opinion in which he ***dissents*** from this holding. They disingenuously lead off their argument with this sentence: "Justice Kavanaugh concurred." ECF 38 at 2. In fact, as explained above, Justice Kavanaugh partially concurred and partially dissented, and the portions of his opinion that Defendants cite are those in which he dissents from the Court's holding. *See*, *e.g.*, *id.* at 2 ("He highlighted that plaintiffs were unlikely to succeed on the merits of their arbitrary and capricious challenge to related agency guidance."). Similarly, Defendants try to support their argument in this case with Justice Kavanaugh's statement that the equities "tilt towards the Government"—ignoring that as to the challenges to the agency directives (there "DEI," here "sanctuary jurisdictions"), Justice Kavanaugh's views did not prevail, and the district court's orders invalidating the agency directives remain in full force. *See supra* at 2-3.

What Plaintiffs seek here is exactly what the Supreme Court upheld in *NIH*: a forward-looking order that holds that the challenged Executive Orders and Agency Directives are unlawful and enjoins them on that basis—before Plaintiffs are irreparably harmed by the withdrawal of critical federal funds. *NIH* re-affirms that such an order is squarely within this Court's province to enter.[7]

---

[7] In a footnote, Defendants state that although a previous list of sanctuary jurisdictions specifically included Plaintiffs, a new one does not. *See* ECF No. 38 at 3 n.1. Suffice it to say that courts take such mid-litigation maneuvers with a grain of salt. *See*, *e.g.*, *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) ("a federal court's constitutional authority cannot be so readily manipulated"); *N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 51-52 (1st Cir. 2021). Defendants have made it abundantly clear through numerous statements and actions—both in this litigation and outside of it—that their position is that Plaintiffs' policies violate federal law and that Plaintiffs can be stripped of federal funding on that basis. *See* ECF No. 10 (Amended Complaint) ¶¶ 74-103; ECF No. 27 (Plaintiffs' Reply Brief) at 5, 10-14. The threat to Plaintiffs is ongoing and imminent. *See*, *e.g.*, ECF No. 37 (Plaintiffs' Notice of HUD Conditions).

Respectfully submitted,

*/s/ Oren Sellstrom*
Iván Espinoza-Madrigal (BBO# 708080)
Oren Sellstrom (BBO# 569045)
Mirian Albert (BBO# 710093)
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, Fifth Floor
Boston, MA 02110
Tel: (617) 482-1145
iespinoza@lawyersforcivilrights.org
osellstrom@lawyersforcivilrights.org
malbert@lawyersforcivilrights.org

*Attorneys for Plaintiffs City of Chelsea and City of Somerville*

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Oren Sellstrom*
Oren Sellstrom