# Exhibit F

DOT Letter



THE SECRETARY OF TRANSPORTATION
WASHINGTON, DC 20590

April 24, 2025

To All Recipients of U.S. Department of Transportation Funding:

The U.S. Department of Transportation (Department or DOT) distributes substantial Federal financial assistance for thousands of projects, programs, and activities operated or initiated by diverse entities, including but not limited to State and local governments. The Department administers this Federal financial assistance to support the development and maintenance of the Nation's transportation infrastructure, pursuant to statutory authority and in accordance with binding contractual agreements in the form of Federal financial assistance agreements, usually grants, cooperative agreements, and loans. Accordingly, I write to clarify and reaffirm pertinent legal requirements, to outline the Department's expectations, and to provide a reminder of your responsibilities and the consequences of noncompliance with Federal law and the terms of your financial assistance agreements. It is the policy of the Department to award and to continue to provide Federal financial assistance only to those recipients who comply with their legal obligations.

As recipients of such DOT funds, you have entered into legally enforceable agreements with the United States Government and are obligated to comply fully with all applicable Federal laws and regulations. These laws and regulations include the United States Constitution, Federal statutes, applicable rules, and public policy requirements, including, among others, those protecting free speech and religious liberty and those prohibiting discrimination and enforcing controls on illegal immigration. As Secretary of Transportation, I am responsible for ensuring recipients of DOT financial assistance are aware of and comply with all applicable legal obligations.

The Equal Protection principles of the Constitution prohibit State and Federal governmental entities from discriminating on the basis of protected characteristics, including race. Indeed, as the Supreme Court declared in *Students for Fair Admission, Inc. v. Harvard (SFFA)*, 600 U.S. 181, 206 (2023), "[t]he clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." The Court further noted that "[o]ne of the principal reasons race is treated as a forbidden classification is that it demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *Id.* at 220. In ruling that race-based admissions programs at universities violated the Equal Protection Clause, the Court made clear that discrimination based on race is, has been, and will continue to be unlawful, except in rare circumstances. *Id.* at 220-21. Similarly, sex-based classifications violate the Equal Protection Clause absent "exceedingly persuasive" justification. *See United States v. Virginia*, 518 U.S. 515, 533 (1996).

These constitutional principles are reinforced by the Civil Rights Act of 1964, which prohibits discrimination based on protected characteristics in the Federal funding and employment contexts in Title VI (42 U.S.C. § 2000d *et seq.*) and Title VII (42 U.S.C. § 2000e-2), as well as the applicable non-discrimination clauses in the Federal Aid Highway Act of 1973 (23 U.S.C. §§ 140 and 324 *et seq.*), the Airport and Airway Improvement Act of 1982, (49 U.S.C. § 47123), and Title IX of the Education Amendments of 1972, as amended (20 U.S.C. § 1681 *et seq.*).

Based on binding Supreme Court precedent and these Federal laws, DOT is prohibited from discriminating based on race, color, national origin, sex, or religion in any of its programs or activities. Moreover, because DOT may not establish, induce, or endorse prohibited discrimination indirectly,[1] it must ensure that discrimination based on race, color, national origin, sex, or religion does not exist in the programs or activities it funds or financially assists.

These same principles apply to recipients of Federal financial assistance from DOT, as both a matter of Federal law and by virtue of contractual provisions governing receipt of DOT funding. Accordingly, DOT recipients are prohibited from engaging in discriminatory actions in their own policies, programs, and activities, including in administering contracts, and their employment practices.

Whether or not described in neutral terms, any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called "diversity, equity, and inclusion," or "DEI," goals, presumptively violates Federal law. Recipients of DOT financial assistance must ensure that the personnel practices (including hiring, promotions, and terminations) within their organizations are merit-based and do not discriminate based on prohibited categories. Recipients are also precluded from allocating money received under DOT awards—such as through contracts or the provision of other benefits—based on suspect classifications. Any discriminatory actions in your policies, programs, and activities based on prohibited categories constitute a clear violation of Federal law and the terms of your grant agreements.

In addition, your legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law. DOT has noted reported instances where some recipients of Federal financial assistance have declined to cooperate with ICE investigations, have issued driver's licenses to individuals present in the United States in violation of Federal immigration law, or have otherwise acted in a manner that impedes Federal law enforcement. Such actions undermine Federal sovereignty in the enforcement of immigration law, compromise the safety and security of the transportation systems supported by DOT

---

[1] *See SFFA*, 600 U.S. at 230; Norwood v. Harrison, 413 U.S. 455, 465 (1973).

financial assistance, and prioritize illegal aliens over the safety and welfare of the American people whose Federal taxes fund DOT's financial assistance programs.

Under the Constitution, Federal law is "the supreme Law of the Land." U.S. Const. Art. VI. That means that where Federal and State legal requirements conflict, States and State entities must follow Federal law. Declining to cooperate with the enforcement of Federal immigration law or otherwise taking action intended to shield illegal aliens from ICE detection contravenes Federal law and may give rise to civil and criminal liability. *See* 8 U.S.C. § 1324 and 8 U.S.C. § 1373. Accordingly, DOT expects its recipients to comply with Federal law enforcement directives and to cooperate with Federal officials in the enforcement of Federal immigration law. The Department also expects its recipients to ensure that the Federal financial assistance they receive from DOT is provided only to subrecipients, businesses, or service providers that are U.S. Citizens or U.S. Nationals and Lawful Permanent Residents (LPRs) or legal entities allowed to do business in the U.S. and which do not employ illegal aliens.

This letter provides notice of the Department's existing interpretation of Federal law. The Department will vigorously enforce the law on equal terms as to all its recipients and intends to take appropriate measures to assess their compliance based on the interpretation of Federal law set forth in this letter. Adherence to your legal obligations is a prerequisite for receipt of DOT financial assistance. Noncompliance with applicable Federal laws, or failure to cooperate generally with Federal authorities in the enforcement of Federal law, will jeopardize your continued receipt of Federal financial assistance from DOT and could lead to a loss of Federal funding from DOT.

The Department retains authority, pursuant to its oversight responsibilities and the terms of your agreements, to initiate enforcement actions, such as comprehensive audits and possible recovery of funds expended in a manner contrary to the terms of the funding agreement. DOT may also terminate funding in response to substantiated breaches of the terms of the agreement, or if DOT determines that continued funding is no longer in the public interest. These steps, within DOT's discretion, are intended to ensure accountability and protect the integrity of Federal programs.

To assist grant recipients in meeting their legal obligations, DOT offers technical guidance and support through its program offices. Should you require clarification regarding your obligations, you are encouraged to contact your designated DOT representative promptly. Proactive engagement is strongly advised to prevent inadvertent noncompliance.

DOT remains committed to advancing a transportation system that serves the public interest efficiently and unleashes economic prosperity and a superior quality of life for American families. This mission depends upon your strict adherence to the legal framework governing our partnership, and I trust you will take all necessary steps to comply with Federal law and satisfy your legal obligations.

Sincerely,

Sean P. Duffy