# Exhibit L

Bove Memo



**U.S. Department of Justice**

Office of the Deputy Attorney General

Washington, DC 20530

January 21, 2025

MEMORANDUM FOR ALL DEPARTMENT EMPLOYEES

FROM:  THE ACTING DEPUTY ATTORNEY GENERAL   *[signature]*

SUBJECT:  Interim Policy Changes Regarding Charging, Sentencing, And Immigration Enforcement

Following President Trump's second inauguration yesterday, I write regarding interim decisions and policy changes pending confirmation of the Attorney General.[1] These interim changes are necessary as an initial response to Executive Orders that President Trump issued yesterday, critical to the Justice Department's mission, and part of the response to three of the most serious threats facing the American people. First, Cartels and other Transnational Criminal Organizations, such as Tren de Aragua (TdA) and La Mara Salvatrucha (MS-13), are a scourge on society resulting in an unstable and unsafe border and huge flows of illegal immigration in violation of U.S. law. Second, brutal and intolerable violent crime by members of these organizations and illegal aliens is escalating rapidly across the country. Third, the fentanyl crisis and opioid epidemic are poisoning our communities and have inflicted an unprecedented toll of addiction, suffering, and death.

The Justice Department must, and will, work to eradicate these threats. Indeed, it is the responsibility of the Justice Department to defend the Constitution and, accordingly, to lawfully execute the policies that the American people elected President Trump to implement. The Justice Department's responsibility, proudly shouldered by each of its employees, includes aggressive enforcement of laws enacted by Congress, as well as vigorous defense of the President's actions on behalf of the United States against legal challenges. The Department's personnel must come together in the offices that taxpayers have funded to do this vitally important work.

## I. Core Principle: Pursuing The Most Serious, Readily Provable Offense

Interim changes to the Justice Department's policy regarding charging and sentencing are necessary in order to implement policies articulated in President Trump's January 20, 2025 Executive Orders relating to the elimination of Cartels and other Transnational Criminal Organizations, and securing our borders against illegal immigration and drug trafficking. Therefore, effective today, the Justice Department's interim policy regarding charging and

---

[1] This interim guidance is not intended to, does not, and may not be relied upon to create, any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

Case 1:25-cv-10442-NMG   Document 48-12   Filed 12/18/25   Page 3 of 4

Memorandum from the Acting Deputy Attorney General                                                           Page 2
Subject: Interim Policy Changes Regarding Charging, Sentencing, And Immigration Enforcement

sentencing is set forth in the May 10, 2017 Memorandum entitled, "Department Charging and Sentencing Policy," which applies to all charging decisions at the Department of Justice and the U.S. Attorney's Offices. Any inconsistent previous policy of the Department of Justice relating to charging and sentencing policy is rescinded, effective today.[2]

Specifically, in the absence of unusual facts, prosecutorial discretion at the Department of Justice and the U.S. Attorney's Offices is bounded by the core principle that prosecutors should charge and pursue the most serious, readily provable offenses. The most serious offenses are those punishable by death where applicable, and offenses with the most significant mandatory minimum sentences (including under the Armed Career Criminal Act and 21 U.S.C. § 851) and the most substantial recommendation under the Sentencing Guidelines.

Each United States Attorney and Assistant Attorney General is responsible for ensuring that this interim policy is implemented and followed. Any deviations from the interim policy's core principle require significant extenuating circumstances, shall be carefully considered, and must be approved consistent with the process described in the May 10, 2017 Memorandum.

## II.   Faithful Execution of the Immigration Laws

Consistent with President Trump's January 20, 2025 Executive Order entitled, "Protecting The American People Against Invasion," the Department of Justice will take all steps necessary to protect the public and secure the American border by removing illegal aliens from the Country and prosecuting illegal aliens for crimes committed within U.S. jurisdiction. These steps shall include, but not be limited to, the following:

Consistent with the core principle of pursuing the most serious, readily provable offense, U.S. Attorney's Offices and the other components shall pursue charges relating to criminal immigration-related violations when such violations are presented by federal, state, or local law enforcement or the Intelligence Community. *See, e.g.*, 8 U.S.C. §§ 1324(c), 1252c (authorizing certain immigration-related arrests by State and local law enforcement officials). This includes, where supported by evidence, prosecutions for violations of 8 U.S.C. §§ 1304, 1306, 1324-1328, 1373 and 18 U.S.C. § 922(g)(5). Each U.S. Attorney's Office shall coordinate as appropriate with the federal courts to inform the courts of this interim policy and develop processes for handling the increased number of prosecutions that will result. Declination decisions relating to immigration-related conduct shall be disclosed as Urgent Reports pursuant to Justice Manual § 1-13.130. On a quarterly basis, the U.S. Attorney's Offices shall report statistics to EOUSA, broken down by law enforcement agency, regarding the number of immigration-related cases referred to the Office, the number of pending immigration-related investigations and prosecutions, the number of immigration-related convictions, and the resulting sentences and removals.

---

[2] The previous policies and guidance rescinded include: "General Department Policies Regarding Charging, Pleas, and Sentencing" (December 16, 2022); "Interim Guidance on Prosecutorial Discretion, Charging, and Sentencing" (January 29, 2021); "Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases" (August 12, 2013); and "Guidance Regarding § 851 Enhancements in Plea Negotiations" (September 24, 2014).

Memorandum from the Acting Deputy Attorney General                                                                 Page 3
Subject: Interim Policy Changes Regarding Charging, Sentencing, And Immigration Enforcement

The Organized Crime Drug Enforcement Task Force (OCDETF) and the Project Safe Neighborhoods (PSN) program shall establish national initiatives to provide focused resources and attention to immigration-related prosecutions at the federal, state, and local levels. OCDETF and PSN will focus on facilitating access by U.S. Attorney's Offices to existing structures in which the Justice Department participates, such as Joint Task Force Vulcan, which targets MS-13 and will be expanded to target TdA, and Joint Task Force Alpha, which targets human trafficking. The regional OCDETF Strike Forces shall prioritize the investigation and prosecution of immigration offenses, including by requiring OCDETF-funded AUSAs to devote significant time and attention to the investigation and prosecution of these crimes. The new OCDETF and PSN national initiatives shall also prioritize enhanced statistical tracking of these efforts.

Pending implementation of the Homeland Security Task Forces announced by President Trump on January 20, 2025, the FBI's Joint Terrorism Task Forces are directed to coordinate with DHS, as well as state and local members, to assist in the execution of President Trump's immigration-related initiatives. The FBI, DEA, ATF, USMS, and BOP shall review their files for identifying information and/or biometric data relating to non-citizens located illegally in the United States. All such information and data shall be disclosed to DHS, for the sole purpose of facilitating appropriate removals, enforcement actions, and immigration-related investigations and prosecutions, unless the agency possessing the information and data determines that a particular disclosure would compromise a significant law enforcement investigation and the U.S. Attorney's Office participating in the investigation concurs in writing with the agency's non-disclosure determination. The agencies' reviews and disclosures shall be completed in 60 days. Concurrences by U.S. Attorney's Offices in non-disclosure determinations shall be disclosed as Urgent Reports pursuant to Justice Manual § 1-13.130.

The Supremacy Clause and other authorities require state and local actors to comply with the Executive Branch's immigration enforcement initiatives. Federal law prohibits state and local actors from resisting, obstructing, and otherwise failing to comply with lawful immigration-related commands and requests pursuant to, for example, the President's extensive Article II authority with respect to foreign affairs and national security, the Immigration and Nationality Act, and the Alien Enemies Act. The U.S. Attorney's Offices and litigating components of the Department of Justice shall investigate incidents involving any such misconduct for potential prosecution, including for obstructing federal functions in violation of 18 U.S.C. § 371, and violations of other statutes, such as 8 U.S.C. §§ 1324, 1373. Declination decisions with respect to resistance, obstruction, or other non-compliance with lawful immigration-related commands and requests from federal authorities shall be disclosed as Urgent Reports pursuant to Justice Manual § 1-13.130.

Finally, laws and actions that threaten to impede Executive Branch immigration initiatives, including by prohibiting disclosures of information to federal authorities engaged in immigration-enforcement activities, threaten public safety and national security. The Civil Division shall work with the newly established Sanctuary Cities Enforcement Working Group, within the Office of the Associate Attorney General, to identify state and local laws, policies, and activities that are inconsistent with Executive Branch immigration initiatives and, where appropriate, to take legal action to challenge such laws.