**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| CITY OF CHELSEA and CITY OF SOMERVILLE,<br><br>*Plaintiffs*,<br><br>v.<br><br><br>DONALD TRUMP, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:25-cv-10442-NMG |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

I.      The Vast Majority of Plaintiffs' Claims Are Not Justiciable.............................................. 2

II.     Plaintiffs' Claims Fail As A Matter of Law. ....................................................................... 6

CONCLUSION................................................................................................................................ 9

**TABLE OF AUTHORITIES**

**CASES**

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967)..................................................................................................... 2

*Bennett v. Spear*,
520 U.S. 154 (1997)..................................................................................................... 7

*Biden v. Nebraska*,
600 U.S. 477 (2023).................................................................................................. 4, 5

*Biden v. Texas*,
597 U.S. 785 (2022)..................................................................................................... 8

*California v. U.S. Dep't of Transp.*,
808 F. Supp. 3d 291 (D.R.I. 2025)................................................................................ 5

*City of Fall River v. Fed. Energy Regul. Comm'n*,
507 F.3d 1 (1st Cir. 2007) ........................................................................................... 2

*Cobell v. Kempthorne*,
455 F.3d 301 (D.C. Cir. 2006)..................................................................................... 7

*Dep't of Com. v. New York*,
588 U.S. 752 (2019)..................................................................................................... 4

*Franklin v. Massachusetts*,
505 U.S. 788 (1992)..................................................................................................... 6

*FTC v. Standard Oil Co.*,
449 U.S. 232 (1980)..................................................................................................... 8

*Hierholzer v. Guzman*,
125 F.4th 104 (4th Cir. 2025)...................................................................................... 5

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990)................................................................................................. 7, 8

*Mississippi v. Johnson*,
71 U.S. 475 (1866)....................................................................................................... 6

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012)..................................................................................................... 9

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003)..................................................................................................... 2

*New Jersey v. Trump*,
    131 F.4th 27 (1st Cir. 2025) ........................................................................... 5

*New York v. United States*,
    505 U.S. 144 (1992) ........................................................................................ 9

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) ........................................................................................ 6

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ...................................................................................... 7, 8

*Roosevelt Campobello Int'l Park Comm'n v. U.S. EPA*,
    684 F.2d 1034 (1st Cir. 1982) ........................................................................ 8

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ........................................................................................ 4

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................................ 2

*Trump v. American Federation of Government Employees*,
    606 U.S. ---, 145 S. Ct. 2635 (2025) (mem.) ............................................. 6, 7

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*,
    714 F.3d 186 (4th Cir. 2013) .......................................................................... 7

**UNITED STATES CONSTITUTION**

U.S. Const. art. III, § 2 ......................................................................................... 2

**STATUTES**

5 U.S.C. § 551 ....................................................................................................... 8

5 U.S.C. § 704 ....................................................................................................... 7

**OTHER AUTHORITIES**

Protecting the American People Against Invasion,
    Exec. Order No. 14,159, 90 Fed. Reg. 8443 (Jan. 20, 2025) ......................... 3

**INTRODUCTION**

As established in Defendants' opening brief, the vast majority of Plaintiffs' claims—all but one—are not justiciable. Those claims challenge Executive Orders and agency directives aimed at ensuring that federal funds are spent in accordance with the President's priorities. Of the various Executive Orders and agency directives issued by four different agencies, Plaintiffs have only alleged an injury in fact as to one agency: the Department of Housing and Urban Development ("HUD"). The claims against the other three agencies, the Department of Justice ("DOJ"), Department of Homeland Security ("DHS") and the Department of Transportation ("DOT"), all fail on justiciability grounds. The claims against DOT are moot because DOT has rescinded the conditions Plaintiffs challenge, so it will not enforce that condition against Plaintiffs. As for the claims against DHS and DOJ, Plaintiffs seek to challenge the agencies' ongoing evaluation process to determine whether future awards of competitive grants can, consistent with applicable law, incorporate immigration-related conditions.

There are several problems with Plaintiffs' request for this Court's intervention. First, because the agencies are still engaged in their ongoing evaluation process to determine which funds are impacted by immigration-related conditions, it is impossible for this Court to evaluate the contours of Plaintiffs' claims. Second, due to the competitive nature of the federal funding at issue, Plaintiffs have no reasonable expectation of receiving funds that may incorporate conditions they find objectionable, so their claimed harm of "budgetary uncertainty" is inapposite. Finally, Plaintiffs' claims fail as a matter of law because they have not challenged discrete, final agency action. For these reasons, and those contained in Defendants' opening brief, this Court should dismiss Plaintiffs' claims.

1

## I. The Vast Majority of Plaintiffs' Claims Are Not Justiciable.

The vast majority of Plaintiffs' claims are not justiciable, for the reasons explained in Defendants' opening brief, *see* Defs.' Mot. to Dismiss Pls.' Second Am. Compl. at 8–13, ECF No. 55 (addressing standing and ripeness). The doctrines of standing and ripeness stem from Article III's constitutional command that federal courts hear only "Cases" and "Controversies." U.S. Const. art. III, § 2. To be justiciable, Plaintiffs must possess standing "for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), and their claims must be ripe. Together, these doctrines prevent "courts from 'entangling themselves in abstract disagreements over administrative policies' and from improperly interfering in the administrative decision-making process." *City of Fall River v. Fed. Energy Regul. Comm'n*, 507 F.3d 1, 6 (1st Cir. 2007) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967)); *see also Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003). But with the lone exception of Somerville's claims against HUD, Plaintiffs' requested relief would do just that.

For the vast majority of these claims, any injury Plaintiffs could suffer is speculative and dependent upon contingent future events. As explained above, only Plaintiff Somerville's claims against HUD do not suffer from this fatal defect because HUD has notified Somerville that it must agree to immigration-related conditions to receive federal funding it administers.[1] By contrast, Plaintiffs have not alleged in their Second Amended Complaint that any agency has taken any action to deny or condition Chelsea's federal funding; nor have they alleged that DOJ or DHS has taken any action to deny or condition Somerville's federal funding. As grant awards are issued, those agencies evaluate whether, consistent with applicable law, terms and conditions can be

---

[1] As alleged in the Complaint, only Plaintiff Somerville was notified that it would have to sign grant agreements containing the challenged immigration condition to receive HUD funds. *See* Second Am. Compl. ¶ 110, ECF No. 48.

imposed to ensure that federal funds do not go to "'sanctuary' jurisdictions"—entities that "seek to interfere with the lawful exercise of Federal law[.]" *See* Protecting the American People Against Invasion, Exec. Order No. 14,159, § 17, 90 Fed. Reg. 8443, 8443 (Jan. 20, 2025). That process, which has been ongoing for the near eighteen-month pendency of this lawsuit, is what Plaintiffs seek to challenge. But until Plaintiffs receive an actual grant award with an objectionable condition that they must accept to receive federal funds, Plaintiffs suffer no cognizable injury and their claims are not ripe for review.

Plaintiffs have no serious response to the justiciability issues posed by the failure of these agencies to take action affecting their funding to date. Rather, they claim that the Executive Orders and agency directives are concrete actions because they are causing them concrete injury—namely, "ongoing harms of budgetary uncertainty stemming from the Executive Orders and Agency Directives, including the ongoing inability to make 'informed decisions' about how to structure their budgets[.]" *See* ECF No. 57 at 7–8 (citation omitted). But as this Court has already recognized in denying Plaintiffs' motion for a preliminary injunction, "[f]or those grants awarded pursuant to a competitive bidding process, . . . the Cities already face uncertainty. They cannot reasonably argue that the EOs and directives adversely affect their budget planning already fraught with unpredictability due to the competitive nature of the grant application process." Mem. & Order at 15–16, ECF No. 41. Yet the vast majority of grants at issue here are awarded pursuant to that competitive bidding process. Indeed, the Second Amended Complaint only identifies HUD's grants, *see* ECF No. 48 ¶ 110, as formula-based.

Plaintiffs further contend that the challenged Executive Orders and agency directives are concrete because they speak in mandatory terms: they "*require*[]" agencies to condition funding consistent with the President's priorities. *See* ECF No. 57 at 8 (emphasis in original). Plaintiffs

3

overlook that the required action is itself the evaluation process, which entails subjective determinations of what cities should be included as sanctuary jurisdictions and what grants will be affected. Absent definitive answers to those questions, it is impossible to evaluate the contours of Plaintiffs' claims. It is even impossible to ascertain whether the defendant agencies consider Plaintiffs to be sanctuary jurisdictions such that any of their funding would be considered for immigration-related conditions in the first place. As Plaintiffs acknowledge, neither Somerville nor Chelsea was included on a list of sanctuary jurisdictions issued by DOJ. *See* ECF No. 48 ¶¶ 46, 71. And while Plaintiffs were included on a similar list published on DHS's website in May of 2025, that list has since been removed. *See* ECF No. 48 ¶ 106 n.1. Even if Plaintiffs were correct that the list is currently being used, it would still be "speculative," as this Court observed, "to assume that inclusion on an agency designation list is indicative of an 'imminent' funding freeze." *See* ECF No. 41 at 14.

Further, Plaintiffs rely heavily on pre-enforcement standing to sustain their claims. *See, e.g.*, ECF No. 57 at 12. Although the loss of federal funding is "primarily [a] future injur[y]," it "may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Dep't of Com. v. New York*, 588 U.S. 752, 767 (2019) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). In *Department of Commerce*, for example, the Supreme Court held that several states had standing to challenge the inclusion of a question about citizenship on the census questionnaire. In that case, evidence at trial established a likelihood that the question would cause noncitizen households to be undercounted, which would cause States to lose out on federal funds that are distributed on the basis of state population. *Id.* Likewise, in *Biden v. Nebraska*, the Court held that a State had standing to challenge the Secretary of Education's plan to forgive student loan debt. 600 U.S. 477, 490 (2023). There, the injury was sufficiently concrete

4

because the Secretary's plan would cost the State "$44 million a year in fees that it otherwise would have earned under its contract with the Department of Education." *Id.*; *see also New Jersey v. Trump*, 131 F.4th 27, 36 (1st Cir. 2025) (emphasizing that the Plaintiffs stood to lose "federal funds to which they otherwise would be entitled").

Here, by contrast, Plaintiffs cannot show that their loss of funding is certainly impending or concrete. The chain of future events that must unfold before any funding for which Plaintiffs intend to apply is affected renders their claims speculative at best. And unlike the funds at issue in the cases outlined above, Plaintiffs cannot claim an entitlement to the funds at issue here due to the competitive nature of the grant awards, which makes the award of those funds inherently unpredictable. Because of the speculative nature of any injury, Plaintiffs' claims are not justiciable.

Finally, Plaintiffs' claims against DOT are moot because another court enjoined DOT from enforcing the conditions Plaintiffs challenge here. *See California v. U.S. Dep't of Transp.*, 808 F. Supp. 3d 291, 299 (D.R.I. 2025). The permanent injunction is now final, thus there is no longer a live controversy here. *Compare Hierholzer v. Guzman*, 125 F.4th 104, 112 (4th Cir. 2025) (finding case not moot where an injunction entered in another case "may still be appealed" and "has not resulted in a final judgment"). Plaintiffs contend, however, that their claims against DOT remain live because they seek to challenge the DOT Order in addition to the challenged conditions. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss the Second Am. Compl. at 9 n.5, ECF No. 57. But the DOT Order, unconnected to any specific conditions imposed on Plaintiffs' funding, does not harm Plaintiffs. The DOT Order simply directs the agency to prioritize projects that require local compliance with federal immigration law "[t]o the maximum extent permitted by law[.]" Unless and until Plaintiffs are injured from the denial of a specific project because of their non-compliance with federal immigration law, they have no standing the challenge the DOT Order.

5

**II. Plaintiffs' Claims Fail As A Matter of Law.**

Defendants also established in their opening brief that Plaintiffs' claims fail to state a claim as a matter of law. By Plaintiffs' own admission, they "challenge Defendants' integrated federal campaign implemented through mutually reinforcing Executive Orders, Agency Directives, funding conditions, designation lists, and enforcement threats, all designed to pressure jurisdictions into abandoning lawful local policies." ECF No. 57 at 12.

First, as to the Executive Orders, Plaintiffs lack a cause of action to sue the President. The actions of the President are not reviewable under the APA because the President is not an "agency" subject to APA review. *Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992). There is likewise no implied equitable cause of action to challenge the Executive Orders, and the President is not an appropriate subject of any injunction. *See id.*; *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866). The same principles that foreclose injunctive relief also foreclose declaratory relief. *See Franklin*, 505 U.S. at 827 (Scalia, J. concurring in part and concurring in the judgment). And the Supreme Court has twice held that causes of action that are available against other government officials should not be extended to the President absent a clear statement by Congress. *See Nixon v. Fitzgerald*, 457 U.S. 731, 748 n.27 (1982); *Franklin*, 505 U.S. at 801.

Further, to the extent the Executive Orders direct agencies to undertake lawful actions to evaluate federal funding agreements, they are plainly lawful on their face. *See* ECF No. 55 at 14. *Trump v. American Federation of Government Employees*, 606 U.S. ---, 145 S. Ct. 2635 (2025) (mem.) is instructive. There, the Supreme Court stayed a preliminary injunction enjoining implementation of an Executive Order and agency memo directing agencies to plan reorganizations and reductions in force. Justice Sotomayor concurred to note that the Executive Order directed agencies to implement that directive "consistent with applicable law," and because

6

the plans themselves were not before the Court, the Court had no occasion to consider whether those plans would be carried out consistent with the constraints of law. *Id.* at 2635. So too here.

Second, with respect to the agency directives, the APA requires aggrieved parties to challenge discrete, final agency action. *See* 5 U.S.C. § 704; s*ee also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (rejecting broad challenge to agency program where challengers had not directed their attack against "some particular 'agency action' that causes [them] harm," but rather sought review of the agency's ongoing operations); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004) ("*SUWA*") (rejecting an APA claim to compel agency action that was neither discrete nor legally required). These limitations are meant to "protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *SUWA*, 542 U.S. at 66. Other courts have applied these principles to conclude that, because "'an on-going program or policy is not, in itself, a final agency action under the APA,' [a court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (citation omitted); *accord Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 195 (4th Cir. 2013) (finding that "implementation" of a policy "is neither agency action nor final agency action subject to judicial review under the APA."); *see also Bennett*, 520 U.S. at 177–78 (explaining that final agency action marks the completion of the agency's decision-making process and the decision is one that determines rights or obligations, or from which legal consequences will flow).

Against that backdrop, Plaintiffs cannot launch a broad programmatic attack against their perceived "integrated federal campaign." ECF No. 57 at 12. In opposition, Plaintiffs lament that "Defendants attempt to defeat Plaintiffs' claims by examining each agency action in isolation." *Id.*

7

They further decry that "Defendants repeatedly dissect the challenged conduct into isolated administrative acts, then argue that each individual piece is either too tentative or too incomplete to review." *Id.* Plaintiffs' grievance is that the APA precludes their claims by requiring any agency action be discrete and final to be reviewable. Indeed, agency action must be one of the "circumscribed, discrete" actions identified in the statutory definition of that term, *SUWA*, 542 U.S. at 62 —*i.e.*, "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof," 5 U.S.C. § 551(13); *see also id.* § 551(4), (6), (8), (10), (11) (defining "rule," "order," "license," "sanction," and "relief"). A plaintiff seeking judicial review under the APA must therefore challenge a "specific" agency action falling within one of these discrete categories, rather than an "abstract" policy or decision divorced from a concrete action, *Biden v. Texas*, 597 U.S. 785, 809 (2022), or an agency "operation" or "program," "at a high[ ]level of generality," *Lujan*, 497 U.S. at 894; *accord SUWA*, 542 U.S. at 64 (the APA's discrete-action "limitation precludes . . . broad programmatic attack[s]"). Plaintiffs' complaint suffers from the same flaws the Supreme Court identified in *SUWA* and *Lujan*. *See* 497 U.S. at 890 (holding that "so-called 'land withdrawal review program'" was "not an 'agency action' within the meaning of" the APA); 542 U.S. at 62–64 (emphasizing APA review is limited to "circumscribed, discrete agency actions").

Once agency action ripens into final agency action, the court can review interlocutory agency orders in connection with its review of the final action. *See Roosevelt Campobello Int'l Park Comm'n v. U.S. EPA*, 684 F.2d 1034, 1041 (1st Cir. 1982) ("Ordinarily, in reviewing 'final' agency action, a court can review the preceding interlocutory determinations as well." (quoting *FTC v. Standard Oil Co.*, 449 U.S. 232, 245 (1980))). But absent final agency action, there can be no judicial review.

Finally, Plaintiffs claim that the agencies' actions are "all designed to pressure jurisdictions into abandoning lawful local policies." ECF No. 57 at 12. But as the Supreme Court has made clear, the Federal Government may use conditions on federal funds to "induce the States to adopt policies that the Federal Government itself could not impose." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 537 (2012); *see also New York v. United States*, 505 U.S. 144, 149 (1992). If Plaintiffs dislike the conditions, they are free to forego the federal money.

Plaintiffs' remaining claims fail as a matter of law for the reasons explained in Defendants' opening brief.

## CONCLUSION

For the reasons above, and those in Defendants' opening brief, this Court should dismiss Plaintiffs' second amended complaint.

Dated: July 24, 2026

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General, Civil Division*

ANDREW I. WARDEN
JOSEPH E. BORSON
*Assistant Branch Directors*

/s/ *Alexander J. Yun*
ALEXANDER J. YUN
D.C. Bar No. 90028923
ELISABETH J. NEYLAN
*Trial Attorneys*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 674-0255
Email: alex.yun@usdoj.gov

*Counsel for Defendants*

9

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2026, the foregoing pleading was filed electronically through the CM/ECF system, which causes all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

/s/ Alexander J. Yun
ALEXANDER J. YUN
Trial Attorney
United States Department of Justice